INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 1357, and WARREN Y.H. CHAR, Appellants-Appellees, *v.* HAWAIIAN TELEPHONE COMPANY, Appellee-Appellant, and JOSHUA C. AGSALUD, Director of the Department of Labor and Industrial Relations, State of Hawaii, and DEPARTMENT OF LABOR AND INDUSTRIAL RELATIONS, STATE OF HAWAII, Appellees

(CIVIL NO. 71485)

AND

HAWAIIAN TELEPHONE COMPANY, Appellant-Employer, *v.* JOSHUA C. AGSALUD, DIRECTOR OF THE DEPARTMENT OF LABOR AND INDUSTRIAL RELATIONS, STATE OF HAWAII; GWENDOLYN P. PASCUA, ALLEN P. PERKINS, individually and as representatives of claimants residing or last employed on Oahu, Appellees

(CIVIL NO. 71492)

AND

JOSHUA C. AGSALUD, DIRECTOR OF THE DEPARTMENT OF LABOR AND INDUSTRIAL RELATIONS, STATE OF HAWAII, Appellant-Appellee, *v.* HAWAIIAN TELEPHONE COMPANY, Appellee-Appellant, and INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 1357, and WARREN Y.H. CHAR, Appellees

(CIVIL NO. 72113)

AND

HAWAIIAN TELEPHONE COMPANY, Appellant-Employer, *v.* JOSHUA C. AGSALUD, DIRECTOR OF THE DEPARTMENT OF LABOR AND INDUSTRIAL RELATIONS, and INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 1357, and ROBERT S. PAGE, EMPLOYMENT SECURITY REFEREE, DEPARTMENT OF LABOR AND INDUSTRIAL RELATIONS, STATE OF HAWAII, Appellees

(CIVIL NO. 75410)

NO. 9773

JANUARY 22, 1986

LUM, C.J., PADGETT, HAYASHI, JJ., INTERMEDIATE COURT OF APPEALS CHIEF JUDGE BURNS IN PLACE OF NAKAMURA, J., DISQUALIFIED, AND INTERMEDIATE COURT OF APPEALS ASSOCIATE JUDGE HEEN IN PLACE OF WAKATSUKI, J., DISQUALIFIED

318

OPINION OF THE COURT BY PADGETT, J.

Hawaiian Telephone Company (Hawtel) appeals a circuit court judgment upholding the 1981 payment by the Department of Labor and Industrial Relations (DLIR) of unemployment compensation to employees who struck Hawtel in 1974.

In consolidated appeals from DLIR referee rulings, the circuit court found as follows: (1) the DLIR had authority under its 1974 regulations to waive HRS § 383-29(a)(2)'s registration requirement; (2) the 1974 strike did not substantially curtail Hawtel's operations and therefore did not, under HRS § 383-30(4), disqualify Hawtel strikers from compensation entitlement; (3) the DLIR's administration of Hawaii's unemployment compensation laws does not violate 29 U.S.C. § 49 (the Wagner-Peyser Act), 42 U.S.C. §§ 503(a)(2) and (8) (the Social Security Act), or federal procedural due process; and (4) Hawtel is collaterally estopped from arguing that 29 U.S.C. § 151 *et seq.,* The National Labor Relations Act (the NLRA), pre-empts the payment of unemployment compensation to the Hawtel strikers.

We affirm these findings and remand for DLIR findings on the question whether the Hawtel strikers met HRS § 383-29(a)(3)'s availability for work requirement.

## I. BACKGROUND

From May 7, 1974 to June 13, 1974, approximately 3,000 Hawtel employees went on strike. During the week of May 7, 1974, the strikers signed or had their names placed on mass claim sheets filed with DLIR by the International Brotherhood of Electrical Workers. *See generally Hawaiian Telephone Co. v. State Department of Labor and Industrial Relations,* 378 F.Supp. 791, 793 (D.Haw. 1974) *(Hawtel I).*

HRS § 383-29(a)(2) imposes a work registration requirement as a prerequisite to eligibility for unemployment compensation. However, § 383-29(a)(2) authorizes DLIR waivers of this requirement "by regulation".[1]

The DLIR's admissions in the circuit court establish that the DLIR waived HRS § 383-29(a)(2)'s registration requirement for the strikers during the week of May 7, 1974.[2] The DLIR claimed waiver authority under now-superseded DLIR Rule XII, Section 8(a) (Section 8(a)).

Section 8(a) generally required claimants to report in person at an employment office or itinerant station to file claims and to register for work. However, Section 8(a) also broadly exempted from in-person filing and registration those individuals performing "less than full-time work" for a regular employer.[3]

---

[1]HRS § 383-29(a)(2) states:
An unemployed individual shall be eligible to receive benefits with respect to any week only if the department of labor and industrial relations finds that . . . [h]e has registered for work at, and thereafter continued to report at, an employment office in accordance with such regulations as the department may prescribe, except that the department may, *by regulation,* waive or alter either or both of the requirements of this paragraph as to individuals attached to regular jobs and as to such other types of cases or situations with respect to which it finds that compliance with such requirements would be oppressive, or would be inconsistent with the purpose of this chapter; provided that no such regulation shall conflict with section 383-21.
(Emphasis added.)

[2]*E.g.,* Rec. Civ. No. 72113 at 4 (DLIR statement of the case). HRCP 72(e) expressly mandates treatment of the DLIR's statement of the case as an original complaint. It is well established that a party's factual allegation in a complaint or other pleading is a judicial admission which binds the party. *E.g., Bellefonte Re Ins. Co. v. Argonaut Ins. Co.,* 757 F.2d 523, 528 (2d Cir. 1985); *Cooke Trust Co. v. Edwards,* 43 Haw. 226, 229 (1959); 9 Wigmore, EVIDENCE § 2589 at 822 (Chadbourn Rev. 1981).

[3]Rule XII, Section 8(a) stated:
Any individual claiming benefits for unemployment, *except an individual who has performed less than full-time work* for his regular employer, shall report in person at

After the strike ended, Hawtel initiated federal litigation in June 1974 to prohibit the DLIR from paying the strikers unemployment compensation. Injunctions issued on NLRA pre-emption grounds in that litigation *(Hawtel I* and *II)* prevented the DLIR from processing the strikers' claims until 1980.[4]

Before the United States Court of Appeals for the Ninth Circuit affirmed the dismissal of Hawtel's supplemental federal complaint *(Hawtel III),*[5] the DLIR paid over $1 million to the former strikers. *Hawaiian Telephone Co. v. State Department of Labor and Industrial Relations,* 691 F.2d 905 (9th Cir. 1982).[6] Contested hearings before a DLIR referee followed. The referee found no substantial curtailment of Hawtel's operations, and accordingly concluded that the strikers were not disqualified under § 383-30(4). However, the referee ruled that benefits had been improperly paid because the DLIR lacked authority to waive § 383-29(a)(2)'s registration requirement.

The circuit court affirmed the referee's finding of no substantial curtailment and rejected Hawtel's federal law arguments. The circuit

---

the employment office or itinerant station most accessible to him and shall there register for work and file a claim for benefits.
(Emphasis added.)

[4]Hawtel obtained a preliminary injunction which prohibited claims processing. *Hawtel I,* 378 F. Supp. at 797-98. The federal district court later permanently enjoined claims processing and held that the NLRA pre-empted state authority to pay unemployment compensation to strikers. The Ninth Circuit reversed. *Hawaiian Telephone Co. v. State Department of Labor and Industrial Relations,* 405 F.Supp. 275, 283-91 (D. Haw. 1976), *cert. before judgment denied* 435 U.S. 943, 98 S.Ct. 1522, 55 L.Ed.2d 539 (1978), *rev'd* 614 F.2d 1197, 1200 (9th Cir.), *cert. denied* 446 U.S. 984, 100 S.Ct. 2965, 64 L.Ed.2d 840 (1980) *(Hawtel II).*

[5]In affirming a dismissal under the State Tax Injunction Act (28 U.S.C. § 1341), the Ninth Circuit ruled that Hawaii's administrative and judicial process afforded a plain and speedy state remedy which, under the Act, foreclosed federal jurisdiction. *Hawaiian Telephone Co. v. State Department of Labor and Industrial Relations,* 691 F.2d 905, 911 (9th Cir. 1982). The post-*Hawtel II* supplemental complaint under 42 U.S.C. § 1983 sought injunctive and declaratory relief for alleged violations of federal procedural due process, the Wagner-Peyser Act, and other federal statutes in Hawaii's administration of unemployment compensation.

[6]In September 1980, a DLIR claims examiner ruled that no substantial curtailment of Hawtel's operations occurred during the strike and that therefore 10 strikers were not disqualified under § 383-30(4). At Hawtel's request, the DLIR reconsidered this ruling and held a predetermination hearing as to all Hawtel strikers. In January 1981 the claims examiner reaffirmed the prior ruling. Compensation payment occurred thereafter.

court reversed the referee's waiver ruling and held that the DLIR properly waived § 383-29(a)(2)'s registration requirement pursuant to Section 8(a). Hawtel then appealed to this court.

## II. *STANDARDS OF REVIEW*

In an appeal from circuit court review of an agency decision, Hawaii appellate courts apply the same review standards applied by the circuit court. Agency fact findings are reviewable for clear error. In contrast, an agency's legal conclusions are freely reviewable. *Camara v. Agsalud,* 67 Haw. 212, 215-16, 685 P.2d 794, 796-97 (1984). An agency's interpretation of its rules receives deference unless it is plainly erroneous or inconsistent with the underlying legislative purpose. *Id.* at 216, 685 P.2d at 797; 2 K. Davis, ADMINISTRATIVE LAW TREATISE § 7.22 at 105-06 (2d ed. 1979).

The legal question of Hawaii law's consistency with federal law was first decided at the circuit court level. The circuit court's decision on that question is freely reviewable.

## III. *THE SECTION 8(a) WAIVER OF REGISTRATION UNDER HRS § 383-29(a)(2)*

### A. *Section 8(a) was a Validly Promulgated Rule*

We reject Hawtel's threshold argument that Section 8(a) was not a validly promulgated rule. Section 8(a) was promulgated in 1951 after notice and a public hearing, the transcript of which appears in the record. Rec. Civ. No. 71485, Vol. I at 152-60. The Hawaii Administrative Procedure Act (HAPA) became effective in 1962. *Aguiar v. Hawaii Housing Authority,* 55 Haw. 478, 485, 522 P.2d 1255, 1260 (1974). Under the HAPA, rules such as Section 8(a) which were in force on the HAPA's effective date remained in force. Act 103, 1961 Haw. Sess. Laws § 17(c) at 85, 90. Thus, Section 8(a) was a valid rule in 1974.[7]

---

[7]Citing "R. Cv. No. 71485, 223-227," Hawtel represents that the DLIR took the position below that Rule XII, including Section 8(a), was implicitly repealed as of 1962 for lack of proper adoption. Amended Opening Brief at 26. Like some other citations to the record in Hawtel's amended opening brief, the citation above is inaccurate. See Rec. Civ. No. 71485, Vol. I at 223-27 (DLIR argument on federal pre-emption); *id.,* Vol. II at 223-27

## B. *Section 8(a) Authorized the § 383-29(a)(2) Registration Waiver.*

The question thus becomes whether Section 8(a) authorized the 1974 registration waiver. We answer this question affirmatively because the historical context of Section 8(a)'s promulgation supports the DLIR's position that Section 8(a) was intended as a continuation of previous rules which expressly waived registration for strikers.

The general principles of construction which apply to statutes also apply to administrative rules. 1A SUTHERLAND STATUTORY CONSTRUCTION § 31.06 at 532 (4th ed. 1985 Rev.). As in statutory construction, courts look first at an administrative rule's language. *Kaiama v. Aguilar,* 67 Haw. 549, 696 P.2d 839, 842 (1985). If an administrative rule's language is unambiguous, and its literal application is neither inconsistent with the policies of the statute the rule implements nor produces an absurd or unjust result, courts enforce the rule's plain meaning. *Puchert v. Agsalud,* 67 Haw. 25, 34, 677 P.2d 449, 456 (1984), *appeal dismissed sub. nom. Pan American World Airways v. Puchert,* 472 U.S. 1001, 105 S.Ct. 2693, 86 L.Ed.2d 710 (1985). The parties' divergent interpretations of Section 8(a) demonstrate the ambiguity of Section 8(a)'s registration waiver for claimants performing "less than full time work" for a regular employer. When, as here, an administrative rule's language is ambiguous, courts must ascertain and effectuate the rule's intent. *Id.* In order to effectuate the rule's intent, it is appropriate to consider the rule's "legislative" history. *Black Construction Corp. v. Agsalud,* 64 Haw. 274, 284, 639 P.2d 1088, 1094, *appeal dismissed* 459 U.S. 1011, 103 S.Ct. 367, 74 L.Ed.2d 504 (1982).

---

(HRCP 54(b) motion and caption pages). The amended opening brief contains numerous inaccurate citations to the record and uses its own shorthand citation forms inconsistently.

These defects are particularly unacceptable in light of the fact that we struck Hawtel's initial opening brief because, among other reasons, its citations to the record were inadequate. Counsel has no right to cast upon the court the burden of searching through a voluminous record to find the ground of an objection. *E.g., Ala Moana Boat Owners v. State,* 50 Haw. 156, 158, 434 P.2d 516, 518 (1967). It is counsel's duty to cite accurately the portions of the record supporting counsel's position.

Section 8(a) was part of a 1951 "revision of existing rules and regulations for the purpose of simplifying and clarifying them." Rec. Civ. No. 71485, Vol. I at 153 (statement at public hearing by Commission of Labor and Industrial Relations chairman Moody). Section 8(a) was not specifically explained or commented on when promulgated. *Id.* at 160. Since intended changes in the rules were specifically pointed out,[8] the context implies that Section 8(a) represented a simplification of existing registration rules rather than change in them.

The rules existing prior to the 1951 revision expressly waived claim filing and the work registration requirement for strikers. Regulation 9(a)(3), a 1942 rule repealed by the 1951 revision, and Regulation 18(a), the 1939 predecessor to Regulation 9(a)(3), provided in identical language that the claim filing and work registration requirements were satisfied by either an employer's report or administrative verification that an individual's unemployment resulted from a strike or other labor dispute.[9]

In identical language, the 1942 and 1939 rules also specifically required employers to submit the labor dispute reports discussed above.[10] Although the 1951 revision eliminated the express registration

---

[8]Chairman Moody noted that the revised regulations made only two principal changes. First, the regulations adopted calendar week payment schedules to replace a pre-existing "flexible week" payment basis. Second, the regulations increased the value of "scheduled perquisites". Rec. Civ. No. 71485, Vol. I at 153.

[9]Regulation 9(a)(3) (1942) and Regulation 18(a) (1939) provided in relevant part:
A report by an employer to the Board of the total unemployment of any individual affected by a mass separation or by a strike, lockout or other labor dispute, or verification by the Board of the fact that any individual's unemployment is the result of a mass separation or a strike, lockout, or other labor dispute, shall constitute the registration for work and the claim for benefits or waiting period credits for any such individual for the [relevant claim period].

[10]Regulation 8(f) (1942) and Regulations 15(a) and (b) (1939) provided:
In case of total unemployment due to a strike, lockout or other labor dispute, the employer shall file with the public employment office nearest his place of business, in lieu of a mass separation notice or individual worker separation reports, a notice setting forth existence of such dispute and the approximate number of workers affected. Upon request by the Board such employer shall furnish to the Board the names of the workers ordinarily attached to the department of the establishment where unemployment is caused by a strike, lockout, or other labor dispute.

waiver for strikers, the revision retained the employer reporting requirement.[11]

Given the 1951 revision's purpose of simplifying existing rules, the retained reporting requirement suggests the intent to continue exempting strikers from registration, since otherwise the retained reporting requirement would be superfluous to the regulatory scheme. Courts strive to give meaning to all parts of an administrative rule and to avoid construing any part as superfluous. *Camara v. Agsalud,* 67 Haw. at 215-16, 685 P.2d at 797. Adherence to that practice here supports the conclusion that the DLIR's 1974 registration waiver for Hawtel strikers pursuant to Section 8(a) was a valid waiver "by regulation", as § 383-29(a)(2) mandates.

Hawtel points out that in 1976 the DLIR replaced Section 8(a) with Regulation II, Rule 1c.3, which, like the pre-Section 8(a) rules, expressly authorized registration waivers for strikers.[12] Hawtel contends that this action effectively conceded that Section 8(a) was not intended to waive registration for strikers. Hawtel reasons that Rule 1c.3 was a change in the law which would have been unnecessary if Section 8(a) had been so intended.

We disagree. An ambiguity surrounding an administrative rule strongly indicates, in the absence of contrary evidence, that a subsequent rule which replaces the ambiguous rule was intended to clarify, rather than change, existing law. *See Municipality of Anchorage v. Sisters of Providence,* 628 P.2d 22, 28 (Alaska 1981); 2A SUTHERLAND STATUTORY CONSTRUCTION, *supra,* § 49.11 at 415; *cf. In Re Island Airlines,* 47 Haw. 87, 123, 384 P.2d 536, 571 (1963) (legislative interpretation of an earlier law during the consideration of a subsequent

---

[11]Rule XII, § 5(f) (1951), which was in effect in 1974, provided:
In case of unemployment due to a strike, lockout, or other labor dispute, the employer shall file with the public employment office nearest his place of business, not later than 24 hours after such unemployment occurs, a notice setting forth existence of such dispute. Upon request by the Board such employer shall furnish the name and social security numbers of the workers ordinarily attached to the department of the establishment where unemployment is caused by a strike, lockout, or other labor dispute.

[12]DLIR Regulation II, Rule 1c.3 (1976), now recodified as Regulation 12-5-31(b)(3) (1981), provided that "registration may be waived for claimants who are ... [i]nvolved in a labor dispute and for whom an employer-employee relationship continues to exist."

law receives no weight in determining the earlier law's purpose). Hawtel has not shown that Rule 1c.3 did anything other than eliminate the ambiguity in Section 8(a).

In view of Section 8(a)'s "legislative" history, it was neither plainly erroneous nor inconsistent with the purpose of Hawaii's unemployment compensation statute to encompass the Hawtel strikers within Section 8(a)'s registration waiver for claimants working "less than full time" for a regular employer. The statute's purpose is to protect workers from the economic insecurity of unemployment. Courts therefore liberally construe the statute and the rules implementing it in order to avoid the unwarranted deprivation of benefits. *Camara v. Agsalud,* 67 Haw. at 216-17, 685 P.2d at 797. With these principles and Section 8(a)'s legislative history in mind, we hold that the DLIR's 1974 registration waiver for the Hawtel strikers under Section 8(a) was a valid waiver "by regulation" pursuant to § 383-29(a)(2).

## IV. *HRS § 383-30(4) DISQUALIFICATION FOR SUBSTANTIAL CURTAILMENT OF HAWTEL'S OPERATIONS*

HRS § 383-30(4) disqualifies for benefits an otherwise eligible individual whose unemployment is due to a "stoppage of work" existing because of a labor dispute at the employer's establishment.[13] A "stoppage of work" is a "substantial curtailment" of the business activities at the employer's establishment. *E.g., Inter-Island Resorts v. Akahane,* 46 Haw. 140, 146, 377 P.2d 715, 720 (1962).

Because the substantial curtailment inquiry is a factual determination, a finding on the issue is not reversible unless it is clearly erroneous. HRS § 91-14(g)(5). The referee's finding of no substantial curtailment was not clearly erroneous.

In determining whether substantial curtailment has occurred, the test is whether a strike substantially curtails an establishment's essential function or basic business activity. *See Ahnne v. Department of Labor and Industrial Relations,* 53 Haw. 185, 192 n.7, 489 P.2d 1397, 1401

---

[13]HRS § 383-30(4) states in relevant part:

An individual shall be disqualified for benefits . . . [f]or any week with respect to which it is found that his unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment or other premises at which he is or was last employed[.]

n.7 (1971). Courts concentrate on the diminution in production activity, and judge each case on its own facts. *Meadow Gold Dairies-Hawaii, Ltd. v. Wiig,* 50 Haw. 225, 229, 437 P.2d 317, 320 (1968).

The parties stipulated that the relevant "establishment" was Hawtel's entire statewide operations. In determining Hawtel's essential function, the referee concluded that Hawtel's business was the provision of telephone and other communications services throughout the islands of the State of Hawaii and between Hawaii and other parts of the world. The parties' joint submission of evidence documented that during the strike the number of toll calls remained approximately normal, the number of local nontoll calls increased 4% to 57%, operator response time decreased .9% to 42.7% and revenue decreased .8% to 5.6%.

In other cases involving equal or greater curtailment of production or revenue, this court has held that the curtailment was insubstantial. *Ahnne* upheld a finding of no substantial curtailment of Qantas Airways' operations during a Honolulu airport strike in which the number of passengers served increased slightly, the number of flights decreased slightly, and revenues decreased by 4%. 53 Haw. at 192-93, 489 P.2d at 1402. *Meadow Gold* similarly upheld a no substantial curtailment finding as to a strike against two dairies which decreased milk production by approximately 18%, substantially decreased the number of employees, and completely stopped retail home deliveries, office work, and maintenance. 50 Haw. at 226-30, 437 P.2d at 318-20.[14]

Hawtel claims that the referee did not consider evidence of reductions of 70% in operators, 66% in outside plant work, and 90% or more in engineering and marketing activity. This evidence, however, does not so convincingly demonstrate substantial curtailment as to establish clear error below. Like the *Meadow Gold* court, we reject the proposition that substantial curtailment occurs whenever a labor dispute forces a significant change in an employer's method of operation, or necessi-

---

[14]The parties cite one "substantial curtailment" case involving striking telephone company employees. The case is distinguishable because the strike in question curtailed operations far more severely than the 1974 Hawtel strike. *Mountain States Tel. & Tel. Co. v. Sakrison,* 71 Ariz. 219, 225-26, 225 P.2d 707, 712 (1950), found substantial curtailment caused by a statewide strike during which toll calls decreased 88%, local calls decreased 93%, revenues dropped 66%, and the number of employees decreased 89%. The Hawtel strike did not approach this degree of operations curtailment.

tates a part of the production process to leave the plant. 50 Haw. at 230, 437 P.2d at 320-21.

## V. *HRS § 383-29(a)(3) AVAILABILITY FOR WORK*

HRS § 383-29(a)(3) conditions eligibility for unemployment compensation upon a claimant's availability for work. Hawtel alleges § 383-29(a)(3)'s violation, and correctly observes that the referee did not make findings on the availability issue.

A remand pursuant to HRS § 91-14(g) is appropriate if an agency's findings are incomplete and provide no basis for review. *In re Kauai Electric Div. of Citizens Util. Co.,* 60 Haw. 166, 185-86, 590 P.2d 524, 538 (1978). Because the referee made no findings on the § 383-29(a)(3) availability issue, we remand to the circuit court with instructions to remand to the referee for findings.

## VI. *FEDERAL STATUTORY VIOLATIONS AND NLRA PRE-EMPTION*

The rationale underlying Hawtel's federal statutory and NLRA pre-emption arguments is that the Wagner-Peyser Act, the Social Security Act, and the NLRA impose a "work test" requiring strikers to register in person with a state employment office and to search for work.[15] Hawtel does not cite, nor has independent research disclosed, any provision in these statutes or their implementing regulations which expressly requires all claimants to file in person or to register and search for work in order to be eligible for benefits. We hold that: (1) the Hawaii unemployment compensation system's payment of benefits to strikers

---

[15]Hawtel also apparently alleges the violation of its "rights" under 42 U.S.C. § 1983. This claim is meritless. Section 1983 merely authorizes a remedy for federal law violations, and does not confer any substantive rights. *Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 618, 99 S.Ct. 1905, 1916, 60 L.Ed.2d 508, 523 (1979).

Hawtel further claims that the referee erred in refusing on separation of powers grounds to decide Hawtel's federal law issues. Hawtel submits that the referee thus deprived Hawtel of the plain and speedy state remedy which *Hawtel III* presumed when dismissing Hawtel's federal action. Hawtel does *not* disclose that Hawtel itself argued to the referee that he lacked the power to decide those issues. DLIR Rec. at 90-96; Tr. 11/24/81 at 23, 31-32. We disapprove of counsel's lack of candor, and decline to consider the separation of powers issue, which is poorly briefed and proceeds on a legal theory not raised below. *Earl M. Jorgensen Co. v. Mark Construction Co.,* 56 Haw. 466, 475, 540 P.2d 978, 985 (1975).

for whom it waives § 383-29(a)(2)'s work registration requirement does not violate the Wagner-Peyser Act or the Social Security Act; and (2) *Hawtel II* collaterally estops the relitigation of NLRA pre-emption.

Both before and after the 1974 Hawtel strike, United States Labor Department interpretive guidelines indicated that the DLIR's treatment of the strikers comported with federal law.[16] An examination of the federal statutes at issue confirms this conclusion.

## A. *The Wagner-Peyser Act*

The Wagner-Peyser Act and its implementing regulations establish a national system of state-run public employment offices. These offices provide employers with a means of recruiting nonlocal workers when the supply of local workers is inadequate. *Alfred L. Snapp, Etc. v. Puerto Rico, ex rel. Barez,* 458 U.S. 592, 594-95, 102 S.Ct. 3260, 3262, 73 L.Ed.2d 995, 999 (1982). The Wagner-Peyser Act's purpose is to protect migratory workers who meet the needs of employers using federal resources to secure workers. *E.g., Gomez v. Florida State Employment Service,* 417 F.2d 569, 571-72 (5th Cir. 1969). Hawtel does not demonstrate that the DLIR practices challenged here frustrate that purpose.

20 C.F.R. § 652.3(e), which implements the Wagner-Peyser Act, requires states to administer a labor exchange system with the capacity to meet "the work test requirements of the *state* unemployment compensation system." (Emphasis added.) As this regulation's plain language instructs, work test requirements, if any, are defined by *state* law rather than federal law.

---

[16]*See* Unemployment Compensation Program Letter No. 1089 (November 16, 1970) (stating federal law does not mandate in-person filing or registration for all claimants); Employment Security Manual § 5002.C (specifically excluding strikers from the claimants to whom a state agency must provide job placement services); opinion letter to the DLIR from the Labor Department Associate Regional Administrator for Unemployment Insurance (August 29, 1980) (concluding that the DLIR's claims-taking and determinations procedures at the time of the 1974 strike complied fully with federal law, and stating that the Labor Department has "long recommended" mass claims procedures and registration waiver for strikers).

These Labor Department guidelines were not duly promulgated under the Federal Administrative Procedure Act and published in the Federal Register. Thus, they lack the force of law and are not binding on a state court. They are persuasive, however, as the historically consistent interpretation of the federal agency charged with administering the unemployment compensation statutory scheme. *Perdue v. Crocker National Bank,* 38 Cal.3d 913, 936 n.26, 216 Cal. Rptr. 345, 360-61 n.26, 702 P.2d 503, 518-19 n.26 (1985).

### B. *The Social Security Act*

Hawtel contends that the DLIR violates 42 U.S.C. §§ 503(a)(2) and (8) because its practice of waiving registration for strikers and not imposing a "work test" fails to constitute the "proper and efficient administration" which those sections require. We reject this contention.

In upholding the payment of unemployment compensation to strikers, the United States Supreme Court concluded that "[t]he voluminous history of the Social Security Act made it abundantly clear that Congress intended the several states to have broad freedom in setting up the types of unemployment compensation that they wish." *New York Telephone Co. v. New York State Department of Labor,* 440 U.S. 519, 537, 99 S.Ct. 1328, 1339, 59 L.Ed.2d 553, 567 (1979) (plurality); *accord id.* at 542, 544, 99 S.Ct. at 1342-43, 59 L.Ed.2d at 570-71; *id.* at 546-47, 99 S.Ct. 1344, 59 L.Ed.2d at 572-73 (Brennan, J., concurring in the result); *id.* at 547, 549, 551, 99 S.Ct. at 1344-46, 59 L.Ed.2d at 573-75 (Blackmun and Marshall, JJ., concurring in the judgment). The court found that the legislative history of the Social Security Act and the NLRA, which Congress enacted within five weeks of one another, demonstrates congressional intent to permit states to pay unemployment compensation to strikers, notwithstanding the states' scheme alteration of the economic bargaining power between labor and management. *Id.* at 531-32 n.20, 99 S.Ct. at 1336 n.20, 59 L.Ed.2d at 563-64 n.20; *id.* at 546-47, 99 S.Ct. at 1344, 59 L.Ed.2d at 572 (Brennan, J., concurring in the result); *id.* at 551, 99 S.Ct. at 1346, 59 L.Ed.2d at 575 (Blackmun and Marshall, JJ., concurring in the judgment).

Pursuant to the state statute at issue, New York charged New York Telephone for $40 million of the $43 million in compensation paid to the strikers. *Id.* at 155 n.6, 99 S.Ct. at 1349 n.6, 59 L.Ed.2d at 578 n.6 (Powell, J., Burger, C.J., and Stewart, J., dissenting). The court upheld this practice and reaffirmed that state unemployment compensation statutes " 'may . . . put the *entire* burden upon the employer[.]' " *Id.* at 538 n.30, 99 S.Ct. at 1340 n.30, 59 L.Ed.2d at 568 n.30 (emphasis added and citation omitted).

We also are unpersuaded by Hawtel's distinction of *New York Telephone* as involving a statute with stricter eligibility criteria than Hawaii's. Although a distinction exists, it is meaningless. The New York statute imposed upon strikers an eight-week waiting period for benefits, as opposed to Hawaii's one-week period. *Id.* at 523, 99 S.Ct. at 1332, 59 L.Ed.2d at 558. Asserting that the New York statute also required

strikers to register and to accept temporary jobs, Hawtel deduces from these facts an implicit "work test". *New York Telephone* discredits this analysis by emphasizing congressional sensitivity to "the importance of the States' interest in fashioning their own unemployment compensation programs and *especially their own eligibility criteria.*" *Id.* at 539, 99 S.Ct. at 1340, 59 L.Ed.2d at 568 (emphasis added).

Under § 383-29(a), work registration provisions are eligibility criteria. As such, they are one of the features of the unemployment compensation system which Congress deliberately left for Hawaii to design. Nothing in *New York Telephone* or the Social Security Act mandates a "work test" or requires Hawaii to impose the same eligibility criteria as New York.

### C. *NLRA Pre-emption*

Hawtel next argues that the NLRA pre-empts the DLIR's administration of unemployment compensation in the period since the Ninth Circuit's 1980 *Hawtel II* decision. The circuit court correctly perceived that this issue formulation is an attempt to evade the collateral estoppel effect of *Hawtel II*'s holding that the NLRA does not pre-empt Hawaii's statutory scheme providing unemployment compensation to strikers.

Collateral estoppel is an issue preclusion doctrine which bars a party from relitigating a factual or legal issue necessarily decided in a prior suit on a different claim involving the party or the party's privy. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n.5, 99 S.Ct. 645, 649 n.5, 58 L.Ed.2d 549, 559 n.5 (1979).[17] However, collateral estoppel is inapplicable if controlling facts or legal rules have changed since the prior suit. *Montana v. United States,* 440 U.S. 147, 158-59, 99 S.Ct. 970, 976, 59 L.Ed.2d 210, 220 (1979).

Hawtel reasons that collateral estoppel is inapplicable. We disagree.

The fundamental issue framed by Hawtel here is identical to the pre-emption issue litigated in *Hawtel I* and *II.* The issue is whether the NLRA pre-empts the payment of unemployment compensation to strikers because the payment alters Congress' balance of labor-management collective bargaining power. *Compare* Amended Opening Brief at 47;

---

[17]In a subsequent state court action, the collateral estoppel effect of a federal law ruling in a prior federal court adjudication is a question of federal law. *See Limbach v. Hooven & Allison Co.,* 466 U.S. 353, 361-62, 104 S.Ct. 1837, 1842-43, 80 L.Ed.2d 356, 364 (1984).

Reply Brief at 8 *with Hawtel II,* 405 F.Supp. at 276; *Hawtel I,* 378 F.Supp. at 794. Hawtel's asserted discovery of additional facts about the DLIR's administrative procedures does not change the identity of the pre-emption issue here and in the prior federal litigation. The procedures concern eligibility criteria which, as explained above, Congress specifically intended the states to design. The procedures therefore are not controlling facts warranting re-examination of the NLRA pre-emption issue.

Collateral estoppel also applies because Hawtel could have raised the additional facts in the federal litigation before its termination by *Hawtel III* in 1982. If a new legal theory or factual assertion advanced in a second action is relevant to the subject matter and the issue adjudicated in a first action, so that it could have been raised in the first action, collateral estoppel applies notwithstanding the failure to raise the legal theory or factual assertion in the first action. 1B MOORE'S FEDERAL PRACTICE ¶ 0.443[2] at 760-61 (1984). The facts upon which Hawtel now relies concern the administration of Hawaii's unemployment compensation scheme. These facts clearly are relevant to the subject matter and issues presented by the *Hawtel III* supplemental complaint, which challenged, under the same federal laws invoked here, "Hawaii's collection and administration of its unemployment tax and benefit scheme[.]" 691 F.2d at 907. We hold that Hawtel is collaterally estopped from relitigating NLRA pre-emption.

## VII. *FEDERAL PROCEDURAL DUE PROCESS*

There also is no merit to Hawtel's federal procedural due process argument. Procedural due process protects only against a *deprivation* of liberty or property interests. *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2704, 33 L.Ed.2d 548, 569 (1972). Due process therefore is relevant only if liberty or property is deprived. *Bill's Crane Service, Inc. v. Quisenberry,* 545 F.Supp. 359, 361 (D.Haw. 1982). Hawtel represents that a property deprivation has occurred through increased unemployment tax assessments to replenish the State employment fund for benefits paid to the Hawtel strikers. The record, however, contains no evidence documenting this representation. When questioned at oral argument, Hawtel's counsel was unable to direct us to any such record evidence. If Hawtel in fact paid increased taxes, it should have ensured that the record clearly reflected the payment. We empha-

size again[18] that an appellate court is not required to sift through a voluminous record for documentation of a party's contentions.

## VIII. *CONCLUSION*

We affirm the circuit court's judgment and remand with instructions to remand to the DLIR referee for findings on the question whether the Hawtel strikers met HRS § 383-29(a)(3) availability for work requirement.

*Jared H. Jossem* (*Richard M. Rand* with him on the briefs, *Torkildson, Katz, Jossem, Fonseca & Moore* of counsel) for appellant Hawaiian Telephone.

*Wayne Matsuura* (*Wendy Lang* with him on the brief), Deputy Attorney General, for appellees Agsalud and Department of Labor and Industrial Relations.

*Herbert R. Takahashi* (*Craig H. Uyehara* with him on the brief) for appellees IBEW, Pascua and Perkins.

---

[18]See n.7, *supra.*