**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-17-0000451**
**20-APR-2021**
**07:58 AM**
**Dkt. 89 SO**

NOS. CAAP-17-0000451 AND CAAP-19-0000664

IN THE INTERMEDIATE COURT OF APPEALS
OF THE STATE OF HAWAIʻI

CAAP-17-0000451
NICOLETA JACOBY, Plaintiff-Appellee,
v.
BENNETT JACOBY, Defendant-Appellant,

AND

CAAP-19-0000664
NICOLETA JACOBY, Plaintiff-Appellee,
v.
BENNETT JACOBY, Defendant-Appellant,

APPEAL FROM THE FAMILY COURT OF THE THIRD CIRCUIT
(FC-D No. 08-1-281K)

### SUMMARY DISPOSITION ORDER
(By: Ginoza, Chief Judge, Leonard and Nakasone, JJ.)

In this consolidated appeal, in CAAP No. 17-0000451, Defendant-Appellant Bennett Jacoby (**Bennett**) appeals from the Family Court of the Third Circuit's (**Family Court**)[1] February 8, 2016 Order on Issues on Remand (**Order on Remand**), and May 2, 2017 Amended Decree Granting Absolute Divorce and Awarding Child Custody **(Amended Decree)**. In CAAP No. 19-0000664, Bennett appeals from the Family Court's[2] August 28, 2019 Order and

---

[1]    The Honorable Aley K. Auna, Jr., presided over this remanded case. Judge Auna also presided over the 2011 divorce proceedings and entered the 2011 divorce decree.

[2]    The Honorable Wendy M. DeWeese presided.

Judgment in Favor of Plaintiff Nicoleta Jacoby (**Nicoleta**) and Against Defendant Bennett Jacoby for Attorney's Fees and Costs (**Order and Judgment for Attorney's Fees and Costs**) and from the September 20, 2019 "Order Following Hearing on [Nicoleta's] March 20, 2019 Motion to Enforce July 5, 2011 Decree and May 2, 2017 Amended Decree, For Order Establishing Manner of Alimony Payments to [Nicoleta], and For Order Directing Defendant to Pay [Nicoleta's] Attorney's Fees and Costs" (**Order on Motion to Enforce**). These orders that are the subject of this current consolidated appeal, were issued following remand pursuant to this court's opinion in Bennett's first appeal, Jacoby v. Jacoby, 134 Hawaiʻi 431, 341 P.3d 1231 (App. 2014) (**Jacoby I**).

In CAAP No. 17-0000451, Bennett contends that the Family Court: (1) abused its discretion and erred as a matter of law in awarding spousal support to Nicoleta in an amount that grossly exceeded the court's calculation of her reasonable needs in its Order on Remand; (2) erred as a matter of law in allocating the values of the parties' respective bank, checking and savings accounts to them twice; and (3) erred as a matter of law in failing to recalculate post-judgment interest based on the corrected allocation of the values of the parties' accounts.

In CAAP No. 19-0000664, Bennett contends that the Family Court: (1) abused its discretion in awarding Nicoleta attorneys' fees without inquiry into the parties' current economic condition; (2) abused its discretion in entering certain findings of fact (**FOF**) relating to Nicoleta's medical issues when no evidence was presented during the hearing on the Motion to Enforce; (3) erred in awarding attorneys' fees to Nicoleta because "this was largely not an enforcement action on which [Nicoleta] prevailed;" and (4) abused its discretion in awarding attorneys' fees to Nicoleta because the award was excessive, not fair and reasonable, and made without an evidentiary hearing.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to

2

the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we vacate and remand in part with respect to the spousal support award, and affirm in all other respects in both cases.

### Spousal support award

Bennett contends that the Family Court abused its discretion and erred as a matter of law in awarding spousal support to Nicoleta in an amount that grossly exceeded the court's calculation of her reasonable needs in its Order on Remand. Bennett specifically argues that if Nicoleta's "reasonable needs were met with a $4,000 award of monthly spousal support prior to considering and accounting for that $4,532 in dividend and interest income," that Nicoleta did not continue to need $4,000 per month in spousal support to meet her reasonable needs. This contention has merit.

In Jacoby I, id., this court recounted the Family Court's factual findings as to Nicoleta's numerous illnesses, inability to pursue gainful employment, and sixteen-year marriage during most of which Bennett provided the family's sole financial support, in affirming the Family Court's award of permanent spousal support to Nicoleta. We also affirmed the Family Court's determination of Nicoleta's reasonable monthly expenses in the amount of $6,237. We held that the Family Court used "erroneous income assumptions" by including the entire amount of $9,064 in investment income as Bennett's, and none to Nicoleta, where the Family Court had awarded 50% of the accounts generating the investment income to Nicoleta. Id. at 446, 341 P.3d at 1246. We remanded for the Family Court to redetermine the monthly spousal support award in light of the corrected income assumptions for investment income. Id. On remand, having applied the corrected income assumptions, the Family Court still arrived at the same spousal support level of $4,000 per month, engaging in a new just

and equitable determination,[3] which was not a part of the remand order.  This was error.

We vacate the spousal support award and remand for the Family Court to recalculate the spousal support award using the corrected investment income figure of $4,532 for each party, and taking into account the $6,237 reasonable monthly expenses amount that was affirmed in Jacoby I.

**Valuation of checking and savings accounts**

Bennett contends that the Family Court erred as a

---

[3]    On remand, the Family Court determined the following:

    1.    Wife's household transportation, and personal monthly expenses total $6,237[.]

    2.    Wife's income is based upon spousal support and $290 payment made by Husband for her medical insurance premiums[.]

    3.    Accrued interest of bonds and Certificates of Deposit is $9,064 per month[.]

    4.    Pursuant to the Decree, the investment accounts that generated the $9,063 monthly income were divided equally.  Accordingly, each party is to receive $4,532 per month ($9,064 ÷ 2) in income generated from these investment accounts.  The Court did not take this into account when it issued its Decree.

    5.    Child support is not considered income for the purposes of calculating spousal support.

    6.    Husband was ordered to pay $290 per month towards Wife's medical insurance premium[.]

    7.    Husband's total monthly income, excluding the deduction of Wife's medical insurance premium, is recalculated to $24,870 ($29,402 - $4,532)[.]

    8.    Wife's total monthly income, excluding the medical insurance premium, is recalculated to $4,532.

    9.    The parties continue to have a large disparity in income; a little over $20,300 difference.

    10.    All FOFs made in the Decree [not] inconsistent [sic] with the findings herein continue to be relevant to the Court's decision regarding spousal support.

    11.    Under the circumstances of this case, it would be just and equitable to continue the award of permanent spousal support of $4,000 per month.

(emphases added).

4

matter of law in allocating the values of the parties' respective bank, check, and savings accounts to them twice.  This contention is without merit.  In Jacoby I, we stated,

> [T]he Family Court improperly failed to account for the parties' respective checking and savings accounts as part of the final property equalization calculation.  Although the Family Court did not abuse its discretion when it ordered that the parties would each keep their own separate accounts, the value of these accounts must nevertheless be taken into consideration and the Family Court erred in failing to include these accounts in its final calculations.

134 Hawaiʻi at 453, 341 P.3d at 1253 (emphasis added).  Accordingly, on remand, the Family Court established that

> 16. . . . [T]he total value of the parties' checking and savings accounts that were allocated should have been specifically identified in the allocation chart.  The ICA specifically stated that the "Court improperly failed to account for the parties' respective checking and savings accounts as part of the final property equalization calculation . . . [and failed] to include these accounts in its final calculations."
>
> 17.  The total amount of the checking and savings accounts for allocation is $93,348; $59,606 to Husband and $33,742 to Wife.

(emphases in original).

Bennett argues that $93,348 was *included* in the 2011 Divorce Trial Order lump sum of $2,691,452, just not separately indicated; consequently, on remand the Family Court calculated $93,348 twice and the Order on Remand findings of fact and conclusions of law (**FOF/COL**) 18 (containing the corrected Allocation Chart) should be amended to reflect a corresponding subtraction of the allocated amounts from the $2,691,452 lump sum.  Bennett's argument disregards our prior holding in Jacoby I, and is without merit.

The 2011 Divorce Trial Order reflects the parties stipulating in paragraph number 4, to "bank and checking accounts with the following values at trial and which will be allocated to each party as indicated:" Nicoleta's checking and savings accounts totaling $33,742 (in First Hawaiian Bank Checking and

5

PenFed Savings); Bennett's accounts totaling $59,606 (in Bank of Hawaii, Emigrant Savings, two Everbank Checking accounts, and PenFed Savings). Pursuant to our prior holding in Jacoby I, the Family Court was correct to add the checking and savings accounts in the Order on Remand insofar as they were omitted from the calculations in the 2011 Divorce Trial Order.

**Post-judgment interest calculation**

Related to the previous point of error, Bennett contends that the Family Court erred as a matter of law in failing to recalculate post-judgment interest based on the incorrect allocation of the values of the parties' checking and savings accounts. Bennett argues that if the checking and savings accounts are excluded, then the "total amount each party should have been entitled to take in cash/liquid assets should have been adjusted to $1,299,052" instead of $1,345,726.[4] As we have rejected Bennett's previous point of error, this contention is also without merit.

In Jacoby I, we found that the Family Court did not abuse its discretion in ordering Bennett to pay statutory post-decree interest, but remanded this issue for a recalculation of interest based on the final property distribution upon allocating the value of the parties' respective checking and savings accounts. 134 Hawaiʻi at 454 n.17, 341 P.3d at 1254 n.17. On remand, the Family Court determined:

> 27. . . . [T]he checking and savings accounts totaling $93,348 was not included in the cash/liquid assets equal distribution.
>
> 28. Apparently the cash/liquid assets were not equally divided after the divorce. Husband, therefore, delivered to Wife $594,805 which represented the balance to equalize the distribution of $1,345,726 to each party.
>
> 29. Since the inclusion of the checking and savings accounts in the recalculation of the

---

[4] The $1,299,052 amount Bennett posits here, comes from $2,691,452 - $93,345 (total of checking and savings accounts) = $2,598,107 divided in half = $1,299,053.50.

6

> equalization payment does not affect the total value of the cash/liquid assets or the check amount of $594,805, the post-judgment interest amount shall remain unchanged.

(emphases added).  The Family Court determined that a recalculation of the post-judgment interest on the $594,805.00 amount was unnecessary and thus, the "post-judgment interest amount shall remain unchanged."

Bennett argues that the post-judgment interest must be recalculated because Bennett owed Nicoleta "a lesser equalization payment of ($1,299,052 - $750,921 =) $548,131 rather than $594,805."  This argument is inaccurate.  First, Nicoleta owed Bennett an equalization payment, not the other way around.  Second, the post-judgment interest award to Nicoleta that is at issue here was not based on the $588,677 equalization payment Nicoleta owed to Bennett, that was waived by the Family Court in the 2011 Divorce Trial Order.  The post-judgment interest award arose from the 2011 Divorce Decree where the Family Court distributed the total liquid assets of $2,691,452 with one-half to each party, or $1,345,726.  The parties subsequently agreed that Bennett's payment of the $1,345,726 distribution that he owed to Nicoleta would be fulfilled by Bennett paying Nicoleta $594,805 ($1,345,726 - $750,921).[5]  In Jacoby I, this history surrounding the $594,805 amount is explained in footnote 5 as follows:

> The Divorce Decree awarded Nicoleta one-half of the total value of the parties' "Bank/Savings, Sec., Ret., Etc." asset (**Accounts**), which the Family Court valued at $1,345,726.  Nicoleta had possession of assets with DOCOEPOT value of $750,921, and Bennett assigned her title to these assets.  Because the Family Court waived Nicoleta's $588,677 equalization payment, Bennett owed her $594,805 ($1,345,26 - $750,921).

---

[5]     Bennett's October 27, 2011 reply memorandum explained, "Both parties agree that Wife was in possession of assets with DOCOEPOT value of $750,921.  On September 30, 2011, Husband's check in the amount of $594,805 was sent to Wife, representing the balance of the $1,345,726 property distribution awarded to Wife by the Court's Divorce Decree.  Thereafter, Husband executed a consent assigning to Wife the bonds and other accounts in her possession with a DOCOEPOT value of $750,921."

> The Family Court ordered that Bennett pay $14,666.40
> in interest on his post-decree payment to Nicoleta of
> $594,805.  The interest was calculated by multiplying
> $162.96 per day by 90 days.

134 Hawai'i at 439 n.5, 341 P.3d at 1239 n.5.  On remand, the Family Court confirmed this in FOF/COL 28, noting that Bennett delivered $594,805 to Nicoleta, "which represented the balance to equalize the distribution of $1,345,726 to each party."

The post-judgment interest award thus arose out of the $594,805 payment by Bennett to Nicoleta of the property distribution award, which the Family Court correctly concluded remained unchanged.  The Family Court did not err in not recalculating post-judgment interest under these circumstances.

### Attorneys' fees on 2019 Motion to Enforce

In CAAP-19-0000664, on March 20, 2019, Nicoleta filed her Motion to Enforce, asking that Bennett be ordered to pay $22,494.81 in unpaid medical insurance premiums for Nicoleta and $4,000 for the January 2019 alimony payment.  She also asked that the court establish a method of sending spousal support payments, specifically that Bennett not send spousal support checks via certified mail, as he had begun doing without her consent in October 2018, because it was difficult for her to go to the post office to pick them up.  The Motion to Enforce also requested fees and costs.  In opposition, Bennett argued that Nicoleta had failed to provide information that her current plan was the reasonable equivalent of the 20/RX Plan that the Family Court had ordered.  Bennett claimed that he should instead be awarded attorneys' fees because he "went to great lengths to try to resolve this matter" after Nicoleta's lack of communication.

At the first hearing on June 3, 2019 on the Motion to Enforce, Bennett agreed to pay the past-due premiums in the monthly amount of $274.83, which was the rate of the 2014 premium, as it was likely the minimum premium amount he owed.  At the second hearing on July 17, 2019, the Family Court found that Nicoleta had demonstrated that she did not unilaterally upgrade her medical coverage and that her current plan was a reasonable

8

equivalent of the court-ordered plan. The Family Court ordered Bennett to pay the remainder of the 2016, 2017, and 2018 premiums, and orally granted Nicoleta's request for attorneys' fees. The Family Court entered its Order and Judgment on Attorney's Fees and Costs on August 28, 2019, awarding $36,703.14 in attorneys' fees and costs to Nicoleta, over Bennett's opposition.[6]

As to Bennett's first contention, we hold that the Family Court did not abuse its equitable discretion to award attorneys' fees, and an inquiry into the parties' current economic condition was not required. Thus, this contention is without merit. HRS § 580-47(f) (2018) provides that the family court may award attorneys' fees and costs to either party to pay all or part of "the fees, costs, and expenses of the other party" relating to a "motion for an order to enforce" an order of spousal support under subsection (a) "as shall appear just and equitable after consideration of the respective merits of the parties, the relative abilities of the parties, the economic condition of each party at the time of the hearing . . . ." "[A]n award of attorney's fees is in the sound discretion of the trial court, limited only by the standard that it be fair and reasonable." Hamilton v. Hamilton, 138 Hawaiʻi 185, 209, 378 P.3d 901, 925 (2016) (internal citations omitted).

The Family Court's decision relied on the first factor, the respective merits of the parties, and Bennett's withholding of Nicoleta's insurance premiums entirely, not just the amount in excess of what was paid in previous years and ordered in 2011, while knowing that Nicoleta had severe medical conditions that required ongoing treatment and continuous medical coverage. At the end of the July 17, 2019 hearing, the Family Court orally granted Nicoleta's request for attorneys' fees and costs, stating:

---

[6] Bennett filed a Declaration of Counsel in Opposition to Plaintiff's Request for Fees and Costs on August 21, 2019 (**Opposition**).

But you know, it does appear to me -- I mean, what just stands out to the Court is that, you know, even when the premiums went up to the $410.53, which was less than what Dr. Jacoby had been ordered to pay previously, he balked at that.

It does not appear from the communications that I read between counsel that any progress was being made to resolve the main issue, which is the insurance premium. And you know, Dr. Jacoby, you know, married Ms. Jacoby knowing that she had these medical conditions. She had certain medical conditions before she married him. She had these conditions during the marriage.

And you know, in the Court's mind, health insurance is a very very important issue for Ms. Jacoby. And the fact that it went on for as long as it did without there being litigation is actually surprising to me.

In its Findings of Fact and Conclusions of Law (**FOF/COL**) on the Motion to Enforce, the Family Court detailed, from 2016 to 2018, Nicoleta's communication to Bennett regarding the increase in her medical insurance premiums, her provision of requested information regarding the health plans, Bennett's requests for further information and refusal to reimburse, and the communications through their attorneys regarding these issues, culminating in the filing of the Motion to Enforce in 2019. The record demonstrates that the Family Court considered "the respective merits of the parties," "the relative abilities of the parties," and "all other circumstances of the case" under HRS § 580-47(f), and did not abuse its discretion in awarding fees and costs to Nicoleta.

We also reject Bennett's argument that an inquiry into the parties' current economic condition was required to impose fees and costs. In fact, Rule 10(c) of the Hawaiʻi Family Court Rules (**HFCR**) explicitly provides that a motion for attorneys' fees in enforcement proceedings, unlike other motions requesting monetary relief, does not require the movant to produce income, expense, asset and debt statements. Thus, the Family Court did not abuse its discretion in awarding fees without an updated account of the parties' current economic condition, as none was required for this enforcement proceeding. See HFCR Rule 10(c).

10

As to Bennett's second contention, FOF/COLs of Nicoleta's medical conditions were sufficiently supported by the record, and this contention is without merit. Bennett argues that no evidence was presented during the hearing on the Motion to Enforce to support the Family Court's FOF/COLs on Nicoleta's medical issues, and maintains that the court should not have included FOF/COLs 3-7, which were included in the 2011 Decree, and FOF/COLs 8-12, which relate to Nicoleta's current medical conditions. This contention is without merit, as the record reflects Nicoleta's 2019 declaration in support of her Motion to Enforce, which lists her various diagnoses including progressive relapsing multiple sclerosis, status post left cerebral hemorrhage due to a brain tumor, bi-lateral weakness, painful numbness, blurred and double vision, and chronic fatigue. Moreover, given that Nicoleta's medical conditions were sufficiently enumerated in the 2011 Divorce Decree and in Jacoby I, 134 Hawaiʻi at 436-37, 341 P.3d at 1236-37, the Family Court did not abuse its discretion in taking notice of them. See Hawaiʻi Rules of Evidence Rule 201(c); State v. Kotis, 91 Hawaiʻi 319, 328-29, 984 P.2d 78, 87–88 (1999) (court may take notice of an adjudicative fact in its own record, with or without a request of the parties). For the same reason, there is no merit to Bennett's contention that the Family Court erred in FOF/COL 13, that Bennett "is and has always been fully aware" of Nicoleta's medical conditions and physical restrictions.

As to Bennett's third contention, the Family Court did not err in awarding attorneys' fees under HRS § 580-47 as this was an enforcement proceeding, and this contention is without merit. Bennett characterizes the Motion to Enforce as not "an enforcement action," and challenges findings and conclusions[7] that would support such a conclusion. The 2011

---

[7] Related to this point, Bennett challenges the Family Court's FOF/COLs 28, 29, 30, 33, and 40, which concern the communication between the parties and/or their counsel between 2016 and 2018. They are not, as he contends, clearly erroneous as they are supported by the record.

11

Decree and 2017 Amended Decree required payment of medical premiums.  Bennett does not dispute that he did not reimburse these premiums between 2016 and 2019, when the Motion to Enforce was filed.  Among the items of relief requested in the motion was payment of these back premiums to comply with the terms of the divorce decree.  "Enforce" plainly means "[t]o give force or effect to (a law, etc.); to compel obedience to."  Enforce, Black's Law Dictionary (11th ed. 2019).  As a result of the Motion to Enforce, Nicoleta was able to obtain her requested relief of payment for these medical premiums.  Nicoleta's Motion to Enforce was an enforcement action to which HRS § 580-47(f) applied, and Bennett's contention is without merit.

As to Bennett's final contention, Bennett failed to demonstrate that the attorneys' fees awarded were excessive or unfair, and this contention is without merit.  As to Bennett's argument that an evidentiary hearing was required for the fee determination, we note that none was requested below, and assuming *arguendo* that a request was made, Bennett does not cite any legal authority requiring such a hearing.[8]

An award of attorneys' fees is at the family court's discretion, "subject only to the standard that it is 'fair and reasonable.'"  Markham v. Markham, 80 Hawaiʻi 274, 288, 909 P.2d

---

Bennett also challenged FOF/COLs 50, 54-58, 60-63, 65-71, 82, and 83, which relate to alimony payments.  He contends that the findings that he failed to make alimony payments or that they were untimely were "untrue and not supported by the record" and unnecessary because the alimony issue was resolved at the first hearing.  Lastly, Bennett objects to FOF/COLs 85-87, which support FOF/COLs 81 and 86, which state that Nicoleta "had no choice" but to file the Motion to Enforce in order to pursue the back premiums and alimony payment, and the FOF/COLs 91-93, that it would be just and equitable to require Bennett to pay attorneys' fees.  These FOF/COLs were supported by the record and not clearly erroneous.

[8]    Bennett alleges as error, "No opportunity for an evidentiary hearing on that issue [(attorneys' fees)] was afforded by the family court."  Bennett does not indicate where in the record this alleged error was objected to or the manner in which this alleged error was brought to the attention of the Family Court.  See Hawaiʻi Rules of Appellate Procedure Rule 28(b)(4)(iii).  At the July 17, 2019 hearing, Bennett only requested to file a reply to the attorneys' fees declaration, which was granted; he did not request a hearing.  Bennett subsequently filed his Opposition and did not request an evidentiary hearing in his Opposition.  Thus, no evidentiary hearing appears to have ever been requested.

12

602, 616 (App. 1996) (quoting Farias v. Farias, 58 Haw. 227, 233, 566 P.2d 1104, 1109 (1977)).  There is support for the fees and costs in Nicoleta's counsel's August 8, 2019 declaration.  See Kamaka v. Goodsill Anderson Quinn & Stifel, 117 Hawaiʻi 92, 122-23, 176 P.3d 91, 121-22 (2008) (no specific findings necessary in granting attorneys' fees).  The Family Court reviewed the attorneys' fees requested, declaration, and supporting documentation, and reduced the amount awarded from the $39,089.99 requested to $36,703.14.  On September 20, 2019, the Family Court entered findings of fact and conclusions of law chronicling the history leading up to the filing of the motion to enforce, what transpired during the enforcement litigation, and the agreements and resolution that were reached, in support of its fee award.

Bennett has not specifically identified the entries and calculations to which he objects, in Nicoleta's counsel's declaration and attachments in support of the fees and costs, which total approximately 70 pages.  See Int'l Bhd. of Elec. Workers, Local 1357 v. Hawaiian Tel. Co., 68 Haw. 316, 322 n.7, 713 P.2d 943, 950 n.7 (1986) (A party "has no right to cast upon the court the burden of searching through a voluminous record to find the ground of an objection.").  We conclude that Bennett failed to meet his burden to show the Family Court's award was not fair and reasonable.  See Markham, 80 Hawaiʻi at 288, 909 P.2d at 616.

Therefore, IT IS HEREBY ORDERED that in CAAP-17-0000451, (1) the Amended Decree Granting Absolute Divorce and Awarding Child Custody entered on May 2, 2017, in the Family Court of the Third Circuit and (2) the Order on Issues on Remand entered on February 8, 2016 are affirmed in part, and vacated in part with respect to the spousal support award.  We remand to the Family Court of the Third Circuit for recalculation of the spousal support award consistent with this Summary Disposition Order.

13

IT IS FURTHER ORDERED that in CAAP-19-0000664, the (1) Order and Judgment in Favor of Plaintiff Nicoleta Jacoby and Against Defendant Bennett Jacoby for Attorney's Fees and Costs entered on August 28, 2019, and (2) the Order Following Hearing on Plaintiff's March 20, 2019 Motion to Enforce July 5, 2011 Decree and May 2, 2017 Amended Decree, for Order Establishing Manner of Alimony Payments to Plaintiff, and for Order Directing Defendant to Pay Plaintiff's Attorney's Fees and Costs entered on September 20, 2019, in the Family Court of the Third Circuit, are affirmed.

DATED:  Honolulu, Hawaiʻi, April 20, 2021.

On the briefs:

Michael S. Zola
for Defendant-Appellant

Charles T. Kleintop
(Kleintop & Luria, LLP)
for Plaintiff-Appellee

/s/ Lisa M. Ginoza
Chief Judge

/s/ Katherine G. Leonard
Associate Judge

/s/ Karen T. Nakasone
Associate Judge

14