HOOVEN & ALLISON COMPANY, APPELLANT AND CROSS-APPELLEE, *v.* LINDLEY, TAX COMMR., APPELLEE AND CROSS-APPELLANT.

[Cite as Hooven & Allison Co. *v.* Lindley (1983), 4 Ohio St. 3d 169.]

(No. 82-559—Decided April 20, 1983.)

*Messrs. Jones, Day, Reavis & Pogue, Mr. Michael A. Nims, Mr. Kenneth E. Updegraft, Jr.,* and *Mr. Charles H. Moellenberg, Jr.,* for appellant and cross-appellee.

*Mr. Anthony J. Celebrezze, Jr.,* attorney general, and *Mr. Richard C. Farrin,* for appellee and cross-appellant.

*Per Curiam.* In the case at bar, this court must first decide whether the doctrine of collateral estoppel bars the commissioner from imposing an *ad valorem* property tax upon imported raw goods stored by Hooven in its warehouse.

In *Montana* v. *United States* (1979), 440 U.S. 147, the United States Supreme Court clearly set forth the operational features of the interrelated doctrines of *res judicata* and collateral estoppel. The court therein declared:

"* * * Under res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action. * * * Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to

the prior litigation. * * *'' (Citations omitted.) *Montana* v. *United States, supra,* at 153. See, also, *Parklane Hosiery Co.* v. *Shore* (1979), 439 U.S. 322, 326, fn. 5; *State, ex rel. Westchester,* v. *Bacon* (1980), 61 Ohio St. 2d 42, 44 [15 O.O.3d 53].

As the instant cause does not involve returns for the same years at issue in *Hooven I,* it is arguable whether the more restrictive doctrine of *res judicata* is apposite here. The applicability of collateral estoppel to the case *sub judice,* however, is undeniable. Both parties to the prior action (the Hooven & Allison Company and the Tax Commissioner of Ohio) are parties to the present, and the ultimate issue decided in *Hooven I* is that now under consideration—whether an *ad valorem* personal property tax may constitutionally be assessed against imported raw materials stored in their original containers for future use.

The commissioner offers this court's decision in *Beatrice Foods Co.* v. *Lindley* (1982), 70 Ohio St. 2d 29 [24 O.O.3d 68], and *Standard Oil Co.* v. *Zangerle* (1943), 141 Ohio St. 505 [26 O.O. 82], as precedent for precluding the application of collateral estoppel to the instant action. Both cases, however, are readily distinguishable. In *Beatrice Foods, supra,* the taxpayer improperly essayed to invoke collateral estoppel where the subject issue had not been previously resolved in an adversary proceeding and where the principle argued for had not, through unchallenged operation over a period of time, gained acceptance as law. Similarly, our ruling in *Standard Oil, supra,* is not germane to the instant action as the applicability of *res judicata,* not collateral estoppel, was at issue there. Moreover, in *Standard Oil,* the taxpayer sought to shield property found to be tax-exempt in a prior year because of its then use from assessment in a later year when the property was employed in a different manner.

Nonetheless, despite the inappositeness of *Beatrice Foods* and *Standard Oil,* it must be acknowledged that, at least in the context of tax determinations, the applicability of collateral estoppel is not untempered. As the United States Supreme Court observed, in *Commissioner* v. *Sunnen* (1948), 333 U.S. 591, at 599-600:

''* * * [C]ollateral estoppel is a doctrine capable of being applied so as to avoid an undue disparity in the impact of income tax liability. A taxpayer may secure a judicial determination of a particular tax matter, a matter which may recur without substantial variation for some years thereafter. But a subsequent modification of the significant facts or a change or development in the controlling legal principles may make that determination obsolete or erroneous, at least for future purposes. * * * [A] judicial declaration intervening between * * * two proceedings may so change the legal atmosphere as to render the rule of collateral estoppel inapplicable. * * *''

The commissioner argues that the United States Supreme Court's decision in *Michelin Tire Corp.* v. *Wages, supra* (423 U.S. 276), so altered the ''legal atmosphere'' relative to the constitutionality of personal property tax-

ation of imports as to eviscerate Hooven's collateral estoppel claims. We strongly disagree.

Although the *Michelin* court clearly felt no compunction in explicitly overruling *Low* v. *Austin* (1871), 80 U.S. 29, the commissioner asks us to hold that that same court experienced a sudden diffidence and only tacitly overruled *Hooven I*. We are thus requested, in effect, to infer an implicit or "constructive" overruling. This we cannot do. Though twice citing *Hooven I* in its *Michelin* decision, the United States Supreme Court made no effort to overrule the former. See *Michelin Tire Corp.* v. *Wages, supra,* at 281, 301, fn. 13. The court's action—or inaction—must be accorded conclusive effect, at least in regard to its intent in reappraising its earlier ruling in *Hooven I*.

Moreover, that the *Michelin* court did not attempt to overrule *Hooven I* should be evident given the factual distinctiveness of the two cases. In *Michelin,* the court upheld the constitutionality of a state *ad valorem* property tax levied upon imported tires that had been mixed with domestically manufactured ones and stored for future sale and delivery to various franchised dealers, without regard to the tires' point of origin.[1] *Hooven I,* however, involved the validity of a state personal property tax assessed against, not imported finished goods ready for sale, but imported raw materials stored in their original packages for later use in the manufacturing process. Indeed, the court, in *Michelin,* specifically reserved judgment on the taxability of imported tire tubes still in their original cartons and segregated from their domestic counterparts, the issue most analogous to that presented in the herein action.[2] Thus, the commissioner's contention that the holding in *Michelin* controls the disposition of the case at bar must fail.

The United States Supreme Court's decision in *Youngstown Sheet & Tube Co.* v. *Bowers* and *United States Plywood Corp.* v. *Algoma* (1959), 358 U.S. 534, also attests to the continued vitality of *Hooven I*. In *Hooven I,* the court declined to consider whether the taxpayer's inventory of imported raw goods was so integral to its daily manufacturing process that the goods lost their status as imports and, thus, became susceptible to state property taxation. In *Youngstown Sheet & Tube, supra,* wherein guidelines for making such a calculation are established, *Hooven I* was explicitly distinguished. The court stated: "Unlike *Hooven,* these are not cases of the mere storage in a warehouse of imported materials intended for eventual use in manufacturing but not found to have been essential to current operational needs." *Youngs-*

---

[1] In *Michelin,* the court additionally overruled *Low* v. *Austin, supra,* to the extent the latter interdicted the imposition of state taxes of any type upon imported goods, particularly the levying of *ad valorem* personal property taxes. *Michelin* has also been viewed as sounding the death knell for the "original package" theory, *i.e.,* that imports still in their original containers are immune from all forms of state taxation. *Michelin Tire Corp.* v. *Wages, supra,* at 297.

[2] As the court stated, in *Michelin Tire Corp.* v. *Wages, supra,* at 279, fn. 2: "The respondents [Gwinnett County, Georgia, Tax Commissioner and Assessors] did not cross-petition from the affirmance of the holding of the Superior Court that the tubes in the corrugated shipping cartons were immune from the tax, and that holding is therefore not before us for review."

*town Sheet & Tube Co.* v. *Bowers, supra,* at 544. Clearly, the United States Supreme Court has issued no decree that invalidates its decision in *Hooven I.*

The commissioner's attempt to distill from *Michelin* a rigid and unassailable principle which would permit the taxation of imported raw materials, like those represented in the case at bar, is inappropriate. In *Brown* v. *Maryland* (1827), 25 U.S. (12 Wheat.) 419, which still contains the preeminent judicial analysis of the Import-Export Clause of the federal Constitution, Chief Justice Marshall disdained the adoption of an inflexible rule for determining which forms of state taxation of imported goods the clause proscribes. In discussing the prerogative of the state to levy such taxes under the clause, he stated:

"* * * The power, and the restriction on it, though quite distinguishable when they do not approach each other, may yet, like the intervening colours between white and black, approach so nearly as to perplex the understanding, as colours perplex the vision in making the distinction between them. Yet the distinction exists, and must be marked as the cases arise. Till they do arise, it might be premature to state any rule as being universal in its application. * * *" *Brown* v. *Maryland, supra,* at 441. The United States Supreme Court has, in short, decreed that no single prescription can adequately treat the constitutional issues raised by state taxation of various imported goods. Thus, the commissioner's attempts, through a misplaced reliance on *Michelin* to do so, must be rejected.

Finally, it has been suggested that we ignore the dictates of *Hooven I* as *Michelin* indicates at the very least the United States Supreme Court's intention presently to abandon the principles embodied in the former action. Were this court to comply with such a request, we would be guilty of overreaching. As was cogently stated in *Penfield Co. of California* v. *SEC* (C.A. 9, 1944), 143 F.2d 746, at 749, certiorari denied (1944), 323 U.S. 768:

"We cannot agree that an inferior federal court may make its prognostication of the weather in the Supreme Court chambers, however well fortified in judicial reasoning, and forecast that the Supreme Court 'seems' about to overrule its prior decision, and outrun that Court to the overruling goal." Like the federal district and appellate courts, we are constrained to abide by the decisions of the nation's highest court until expressly overruled by that tribunal.

Finding the commissioner's levying of an *ad valorem* personal property tax upon the subject imported goods barred by the doctrine of collateral estoppel, we decline to address the constitutional issues raised by Hooven in its appeal.

Accordingly, the decision of the Board of Tax Appeals is affirmed.

*Decision affirmed.*

CELEBREZZE, C.J., W. BROWN, SWEENEY, LOCHER, HOLMES, C. BROWN and J. P. CELEBREZZE, JJ., concur.