# LIMBACH, TAX COMMISSIONER OF OHIO *v.* HOOVEN & ALLISON CO.

No. 83–96.   Argued February 22, 1984—Decided April 18, 1984

BLACKMUN, J., delivered the opinion for a unanimous Court.

*Richard C. Farrin,* Assistant Attorney General of Ohio, argued the cause for petitioner. With him on the briefs was *Anthony J. Celebrezze, Jr.,* Attorney General.

*Michael A. Nims* argued the cause for respondent. With him on the brief was *Charles H. Moellenberg, Jr.**

JUSTICE BLACKMUN delivered the opinion of the Court.

In *Hooven & Allison Co.* v. *Evatt,* 324 U. S. 652 (1945) *(Hooven I),* this Court passed upon the constitutionality of Ohio's application of a nondiscriminatory ad valorem personal property tax to imported fibers still in their original packages. The result there was unfavorable to the State. In this case, the Tax Commissioner of Ohio asks us to sustain

_____

*\*James F. Gossett* filed a brief for the International Association of Assessing Officers as *amicus curiae* urging reversal.

the application of the same nondiscriminatory ad valorem personal property tax to like fibers, still in their original packages, imported by the same manufacturer. The case thus presents, primarily, an issue of preclusion framed in terms of collateral estoppel.

## I

The Hooven & Allison Company (Hooven) is a domestic manufacturer of cordage products made from natural fibers. These fibers—hemp, sisal, jute, manila, and the like—are not grown in the United States and must be imported. Upon their arrival in this country, the imported fibers are transported by rail to Hooven's plant in Xenia, Ohio, where they are stored in their original packages for future use in Hooven's manufacturing process.

In accord with Ohio Rev. Code Ann. § 5711.16 (1980), Hooven timely filed personal property tax returns for 1976 and 1977. In those returns, Hooven listed these original-package imported fibers as "imports," but deducted their value from the total value of its manufacturing inventory. The following written explanation was given:

> "The inventories represent fibers imported by the taxpayer from foreign countries, held in the original packages in its warehouses in Xenia prior to being used in manufacturing cordage, and when they are removed therefrom or placed in the production line in the factory, such imported fibers so used, or removed from the original package, are thereupon transferred to the Goods in Process and are included in the taxable inventories in Xenia City." Joint Record in the Supreme Court of Ohio 11.

In taking this deduction, Hooven relied expressly on this Court's 1945 decision in *Hooven I*. In that decision, the Court, by a closely divided vote, ruled that subjecting Hooven's imported original-package raw materials to Ohio personal property taxation would be in violation of the

Import-Export Clause of the United States Constitution, Art. I, § 10, cl. 2.

The Tax Commissioner of Ohio, however, for each of the two years in question, disallowed the deduction and added back into Hooven's taxable manufacturing inventory the imported raw materials held for future use in manufacturing. Hooven's asserted property tax liability for each of those years, accordingly, was increased.

Upon application for review, the Tax Commissioner sustained the increased assessments. She rejected federal constitutional arguments advanced by Hooven, as well as an additional argument that, by the decision in *Hooven I*, she was collaterally estopped from levying the increased assessments. The Tax Commissioner in so ruling relied on *Michelin Tire Corp.* v. *Wages*, 423 U. S. 276 (1976).

Hooven then appealed to the Ohio Board of Tax Appeals, advancing the same collateral-estoppel and federal constitutional issues. That Board reversed the Tax Commissioner. App. to Pet. for Cert. A–10. It ruled that the Commissioner was collaterally estopped by the decision in *Hooven I*. It noted that the parties were the same as those in *Hooven I;* that the issue as to the taxability of original-package raw materials was also the issue in *Hooven I;* that the raw materials and the type of taxation were identical to those involved in *Hooven I;* that *Hooven I* has not been "reversed" by this Court "and thus, has the force and effect of law"; and that, under the doctrine of collateral estoppel, litigation of the issue was barred "and the exemption from taxation was improperly held to be unavailable." App. to Pet. for Cert. A–23. The Board rejected the Tax Commissioner's argument that the decision in *Michelin* implicitly had overruled *Hooven I*. The Board did not reach or consider the constitutional issues, observing that it lacked jurisdiction to do so. App. to Pet. for Cert. A–20; see *S. S. Kresge Co.* v. *Bowers*, 170 Ohio St. 405, 166 N. E. 2d 139 (1960), appeal dism'd, 365 U. S. 466 (1961).

Hooven and the Tax Commissioner each filed a notice of appeal to the Supreme Court of Ohio, the taxpayer doing so in order to preserve the constitutional issues, and the Tax Commissioner pressing the collateral-estoppel issue. The Supreme Court of Ohio affirmed the ruling of the Ohio Board of Tax Appeals. *Hooven & Allison Co.* v. *Lindley,* 4 Ohio St. 3d 169, 447 N. E. 2d 1295 (1983). That court, in a unanimous *per curiam* opinion, ruled that principles of collateral estoppel prohibited the Tax Commissioner from assessing personal property taxes upon Hooven's imported raw materials held in the original containers for future use in manufacturing. It acknowledged the presence of *Michelin* but noted that this Court had not overruled *Hooven I* in *Michelin,* although it had not hesitated expressly to overrule *Low* v. *Austin,* 13 Wall. 29 (1872). Thus, the Ohio court observed, this Court's "action—or inaction—must be accorded conclusive effect, at least in regard to its intent in reappraising its earlier ruling in *Hooven I.*" 4 Ohio St. 3d, at 172, 447 N. E. 2d, at 1298. The court then "decline[d] to address the [federal] constitutional issues raised by Hooven in its appeal." *Id.,* at 173, 447 N. E. 2d, at 1299.

We granted certiorari. 464 U. S. 813 (1983).

## II

In *Low* v. *Austin, supra,* this Court, in an opinion by Justice Field, unanimously enunciated the "original-package" doctrine, although perhaps not for the first time, see *Brown* v. *Maryland,* 12 Wheat. 419, 442 (1827). It held that, under the Import-Export Clause, goods imported from a foreign country are not subject to state ad valorem property taxation while remaining in their original packages, unbroken and unsold, in the hands of the importer.

In *Michelin Tire Corp.* v. *Wages, supra,* an importer challenged the assessment of Georgia's nondiscriminatory ad valorem property tax upon an inventory of imported tires and tubes maintained at a wholesale distribution warehouse.

This Court rejected the challenge to the state tax on the imported tires.[1] It found that in the history of the Import-Export Clause, there was nothing to suggest that a tax of the kind imposed on goods that were no longer in import transit was the type of exaction that was regarded as objectionable by the Framers. The tax could not affect the Federal Government's exclusive regulation of foreign commerce since it did not fall on imports as such. Neither did the tax interfere with the free flow of imported goods among the States. The Clause, while not specifically excepting nondiscriminatory taxes that had some impact on imports, was not couched in terms of a broad prohibition of every tax, but prohibited States only from laying "Imposts or Duties," which historically connoted exactions directed only at imports or commercial activities as such. The Court concluded that its reliance a century earlier in *Low* v. *Austin* "upon the *Brown* dictum . . . was misplaced." 423 U. S., at 283. Chief Justice Taney's opinion in the *License Cases*, 5 How. 504 (1847), was carefully analyzed, with the Court concluding that that opinion had been misread in *Low*. "[P]recisely contrary" to the reading it was given in *Low*, Chief Justice Taney's *License Cases* opinion was authority "that nondiscriminatory ad valorem property taxes are not prohibited by the Import-Export Clause." 423 U. S., at 301. It followed, this Court concluded, that "*Low* v. *Austin* was wrongly decided" and "therefore must be, and is, overruled." *Ibid.* *Hooven I* was directly cited only once in *Michelin*, and then only in a footnote in which the Court stated that it found it unnecessary to address the assertion in *Hooven I* that Congress could consent to state nondiscriminatory taxation of imports even

---

[1] Because the respondents there, the county Tax Commissioner and Tax Assessors, did not cross-petition for certiorari, the Georgia courts' ruling that tubes still in corrugated shipping cartons were immune from the tax was not before this Court for review. *Michelin Tire Corp.* v. *Wages*, 423 U. S., at 279, n. 2.

were such taxes within the prohibition of the Import-Export Clause. See 423 U. S., at 301, n. 13. While we acknowledge that *Hooven I* was not expressly overruled in *Michelin*, the latter case strongly implies that the foundation of the former had been seriously undermined.[2]

It is apparent, and indeed clear, that *Michelin*, with its overruling of *Low* v. *Austin*, adopted a fundamentally different approach to cases claiming the protection of the Import-Export Clause. We said precisely as much in *Washington Revenue Dept.* v. *Association of Wash. Stevedoring Cos.*, 435 U. S. 734 (1978):

> "Previous cases had assumed that all taxes on imports and exports and on the importing and exporting processes were banned by the Clause. . . . So long as the goods retained their status as imports by remaining in their import packages, they enjoyed immunity from state taxation. . . .
>
> "*Michelin* initiated a different approach to Import-Export Clause cases. It ignored the simple question whether the tires and tubes were imports. Instead, it analyzed the nature of the tax to determine whether it was an 'Impost or Duty.' 423 U. S., at 279, 290–294. Specifically, the analysis examined whether the exaction offended any of the three policy considerations leading to the presence of the Clause:
>
> 'The Framers of the Constitution thus sought to alleviate three main concerns . . . : the Federal Government must speak with one voice when regulating commercial relations with foreign governments, and tariffs, which might affect foreign relations, could not be implemented

---

[2] Since *Michelin, Hooven I* has been cited by this Court only twice. See *California Retail Liquor Dealers Assn.* v. *Midcal Aluminum, Inc.*, 445 U. S. 97, 111 (1980), and *Kleppe* v. *New Mexico*, 426 U. S. 529, 540 (1976). Neither citation bears upon the issue before us in the present case.

by the States consistently with that exclusive power; import revenues were to be the major source of revenue of the Federal Government and should not be diverted to the States; and harmony among the States might be disturbed unless seaboard States, with their crucial ports of entry, were prohibited from levying taxes on citizens of other States by taxing goods merely flowing through their ports to the other States not situated as favorably geographically.' *Id.*, at 285–286 (footnotes omitted).

"The ad valorem property tax there at issue offended none of these policies. . . . The Court therefore concluded that the Georgia ad valorem property tax was not an 'Impost or Duty,' within the meaning of the Import-Export Clause . . . ." *Id.*, at 752–754.

See also *id.*, at 762 (opinion concurring in part and concurring in result).

To repeat: we think it clear that this Court in *Michelin* specifically abandoned the concept that the Import-Export Clause constituted a broad prohibition against all forms of state taxation that fell on imports. *Michelin* changed the focus of Import-Export Clause cases from the nature of the goods as imports to the nature of the tax at issue. The new focus is not on whether the goods have lost their status as imports but is, instead, on whether the tax sought to be imposed is an "Impost or Duty." See P. Hartman, Federal Limitations on State and Local Taxation, § 5:4 (1981); Hellerstein, State Taxation and the Supreme Court: Toward a More Unified Approach to Constitutional Adjudication?, 75 Mich. L. Rev. 1426, 1427–1434 (1977). Cf. *Montana* v. *United States*, 440 U. S. 147 (1979).

*Hooven I* held that, under the Clause, a nondiscriminatory state ad valorem personal property tax could not be imposed until the imported goods had lost their status as imports by being removed from their original packages. This decision was among the progeny of *Low* v. *Austin* for it, too, was decided on the original-package doctrine. Thus, *Hooven I* is

inconsistent with the later ruling in *Michelin* that such a tax is not an "Impost or Duty" and therefore is not prohibited by the Clause. Although *Hooven I* was not expressly overruled in *Michelin*, it must be regarded as retaining no vitality since the *Michelin* decision. The conclusion of the Supreme Court of Ohio that *Hooven I* retains current validity in this respect is therefore in error. A contrary ruling would return us to the original-package doctrine. So that there may be no misunderstanding, *Hooven I*, to the extent it espouses that doctrine, is not to be regarded as authority and is overruled.

## III

### A

Respondent Hooven, however, argues that because the Court in *Michelin* did not expressly overrule *Hooven I*, it must follow that *state*-law principles of collateral estoppel bar the imposition of an ad valorem tax upon Hooven's raw materials inventory.

We reject the suggestion that we are confronted, in the present posture of the case, with a claim of collateral estoppel under state, as distinguished from federal, law. *Hooven I* was a decision concerned with the application and impact of the Import-Export Clause upon the Ohio tax. The issue, thus, was one of a federal constitutional barrier. The Supreme Court of Ohio certainly so viewed it. It referred to both *Hooven I* and *Michelin* in federal constitutional terms and it described the issue before it as whether the contested tax "may constitutionally be assessed" in light of the Import-Export Clause. 4 Ohio St. 3d, at 171, 447 N. E. 2d, at 1297. And it viewed collateral estoppel in the light of precepts set forth in *Commissioner* v. *Sunnen,* 333 U. S. 591 (1948), a federal income tax case. From this premise, the Ohio court moved to its judgment that the levy of the tax was "barred by the doctrine of collateral estoppel." 4 Ohio St. 3d, at 173, 447 N. E. 2d, at 1299.

Collateral estoppel, therefore, was applied as a matter of federal, not state, law. We perceive in this case no state-law

overtones that, by any stretch of the imagination, could serve to insulate the case from review here. We are concerned with federal issues and a contention that a state court disregarded a federal constitutional ruling of this Court. The issue, then, is reviewable here. See *Deposit Bank* v. *Frankfort*, 191 U. S. 499 (1903); *Stoll* v. *Gottlieb*, 305 U. S. 165 (1938); *Toucey* v. *New York Life Ins. Co.*, 314 U. S. 118, 129, n. 1 (1941).

B

We move on to respondent's collateral-estoppel argument. It is true, of course, that the parties in *Hooven I* were the same parties as those before us in the present case. It is true that the property sought to be taxed for 1976 and 1977 identifies with the property sought to be taxed for 1938, 1939, and 1940 in *Hooven I*. And it is true that the tax involved is the same Ohio nondiscriminatory ad valorem personal property tax. The parties, the tax, and the goods imported and their containers are the same. The Tax Commissioner does not dispute this. Tr. of Oral Arg. 12. Collateral-estoppel concepts, therefore, might have an initial appeal.

The years involved in this tax case, however, are not the same tax years at issue in *Hooven I*. Because of this, *Commissioner* v. *Sunnen, supra*, is pertinent and, indeed, is controlling. That case concerned licenses granted by a patent owner and his assignment of interests in the royalty agreements to his wife. An earlier decision of the Board of Tax Appeals, involving the same facts, questions, and parties but different tax years, was held not to be conclusive under the doctrine of collateral estoppel because certain intervening decisions of this Court made manifest the error of the result that had been reached by the Board. 333 U. S., at 602–607. The reason for not applying the collateral-estoppel doctrine in the present case is even stronger than that in *Sunnen*, for here the constitutional analysis of the earlier case is *repudiated* by this Court's intervening pronouncement.

Because the Supreme Court of Ohio did not apply the principles of *Sunnen,* its judgment must be vacated and the case remanded. Failure to follow *Sunnen*'s dictates would lead to the very tax inequality that the admonition of that case was designed to avoid. Hooven then would be immune forever from tax on its imported goods because of an early decision based upon a now repudiated legal doctrine, while all other taxpayers would have their tax liabilities determined upon the basis of the fundamentally different approach adopted in *Michelin.* See *Sunnen,* 333 U. S., at 599.

Petitioner, therefore, is not barred by collateral estoppel in asserting the increases in tax for 1976 and 1977.

## IV

The case is before us without a developed factual record. Hooven takes the position that it is entitled to an opportunity to demonstrate that the facts of this case are significantly different from those of *Michelin,* so that the result in that case is not controlling here. Hooven suggests that in *Michelin,* the tires had been mingled with domestically manufactured tires and had been arranged and stored for sale and delivery; moreover, the tires were finished goods. Here, according to Hooven, its imported fibers are not for sale, are not finished goods, and are destined for incorporation into a manufacturing process. Hooven further asserts that, once a factual record has been developed, a court will be in a position to examine the case in the light of any other constitutional provision respondent is then in a position to invoke, including the Foreign Commerce Clause.

Any development of the record, of course, should take place in the state courts and first be evaluated there. Accordingly, we make no judgment on the merits of Hooven's constitutional claims. The judgment of the Supreme Court of Ohio is therefore vacated, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*