AUTO CARGO, INC., Plaintiff-Appellant,

v.

MIAMI DADE COUNTY, Defendant-Appellee.

No. 99-12176.

United States Court of Appeals,

Eleventh Circuit.

Jan. 8, 2001.

Appeal from the United States District Court for the Southern District of Florida. (No. 96-02138-CV-ASG), Alan Stephen Gold, Judge.

Before BARKETT and WILSON, Circuit Judges, and DOWD[*], District Judge.

BARKETT, Circuit Judge:

Auto Cargo, Inc. ("Auto Cargo") appeals from summary judgment in favor of Miami Dade County ("Dade County") in this action brought on behalf of a class of all persons and entities required to pay to Dade County $7.50 for every used, self-propelled vehicle exported through the U.S. Customs vehicle inspection facility at the Port of Miami (the "Port"). The question presented is whether the required payment is prohibited by the Import-Export Clause of the U.S. Constitution. We affirm, finding that it does not violate the Import-Export Clause.

BACKGROUND

Dade County, which operates the Port, allowed the U.S. Customs Service to place a trailer rent-free on property set aside by the Port to serve as a vehicle inspection facility. The purpose of the facility is to inspect and process, in accordance with federal regulations, 19 C.F.R. §§ 192 *et seq.* (2000), vehicles presented for export as well as to prevent the export of stolen used cars.[1] In 1994, in order to recoup its costs for the establishment of the inspection facility, the Port introduced a five dollar "vehicle export fee" on each used, self-propelled vehicle for which export authorization was sought. In 1995, Dade County passed County Ordinance 95-200 (the "1995 Ordinance"), increasing the fee to $7.50 and earmarking the additional $2.50 to the Dade County Multi-Agency Auto Theft Task Force. The Task Force is comprised of representatives

---

[*]Honorable David D. Dowd, U.S. District Judge for the Northern District of Ohio, sitting by designation.

[1]The 1992 amendments to the Tariff Act of 1930 authorize the Commissioner of Customs to "establish specific criteria for randomly selecting used automobiles scheduled to be exported, consistent with the risk of stolen automobiles being exported...." 19 U.S.C. § 1646c.

from city and county police departments, Customs, and the FBI, and it conducts investigations into organized groups of auto thieves. These investigations focus on South Florida but can be national and international in scope. The Task Force has its main office in the Miami Dade Police headquarters in Miami, but it has a satellite office in the vehicle inspection facility, and six of its employees work there full-time inspecting cargo containers. The Task Force devotes much of its work to reducing the flow of stolen vehicles through the Port.

Auto Cargo is a Florida company that exports used, self-propelled vehicles (mostly automobiles) and acts as an agent to the vehicle owners to secure clearance for export through Customs. Auto Cargo sued the County on behalf of a class consisting of "[a]ll persons and entities who have been required to pay ... an export Duty, tax or fee upon used, self-propelled vehicles ... in order to gain access to the U.S. Customs Vehicle Inspection Facility at the Port of Miami," arguing that the inspection fee, although disguised as a user fee, is really a means to raise revenue for the County and constitutes an improper tax violating the Import-Export Clause of the U.S. Constitution. The district court certified the class and, after discovery, both sides moved for summary judgment. The district court granted summary judgment to Dade County, finding that the inspection fee is not discriminatory under the Import-Export Clause.

On appeal, Auto Cargo contends that the district court erroneously resolved disputed issues of material fact in favor of Dade County and that the district court misapplied controlling law in determining that the required payment was not discriminatory in its application. We review *de novo* a district court's grant of summary judgment, applying the same legal standards as the district court. *See Whatley v. CNA Ins. Cos.,* 189 F.3d 1310, 1313 (11th Cir.1999). Summary judgment is appropriate if the evidence before the court shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

## DISCUSSION

Preliminarily, we reject, as inconsistent with its position before the district court, Auto Cargo's contention that the district court erroneously resolved disputed issues of material fact. In its reply to Dade County's memorandum in opposition to Auto Cargo's motion for summary judgment, Auto Cargo noted that "[b]oth parties have taken the position that there are no material questions of fact which would prevent the granting of summary judgment."

The issue presented in this case is whether the inspection fee violates the Import-Export Clause of

the U.S. Constitution.[2]  The Import-Export Clause provides:

> No State shall, without the Consent of the Congress, lay any Imposts or Duties on Imports or Exports, except what may be absolutely necessary for executing its inspection Laws:  and the net Produce of all Duties and Imposts, laid by any State on Imports or Exports, shall be for the Use of the Treasury of the United States;  and all such Laws shall be subject to the Revision and Controul of the Congress.

U.S. Const. art. I, § 10, cl. 2.  Although duties and imposts are indisputably taxes, the Supreme Court has interpreted the Import-Export Clause to permit states to impose "generally applicable, nondiscriminatory taxes even if those taxes fall on imports or exports."  *United States v. Int'l Business Machines Corp.,* 517 U.S. 843, 852, 116 S.Ct. 1793, 135 L.Ed.2d 124 (1996) (citing *Department of Revenue of Washington v. Ass'n of Washington Stevedoring Cos.,* 435 U.S. 734, 98 S.Ct. 1388, 55 L.Ed.2d 682 (1978);  *Michelin Tire Corp. v. W.L. Wages,* 423 U.S. 276, 96 S.Ct. 535, 46 L.Ed.2d 495 (1976)).

Before *Michelin,* assessment of the validity of a state exaction under the Import-Export Clause turned on the question of whether or not the goods retained their status as imports or exports at the time of the exaction.  *Low v. Austin,* 13 Wall. 29, 80 U.S. 29, 20 L.Ed. 517 (1871).  Thus a state could not tax goods destined for export once they entered the "export stream," and it could not tax an imported item so long as that item remained in its "original package."  *Washington Stevedoring,* 435 U.S. at 758, 98 S.Ct. 1388.  *Michelin* overruled cases that stressed the nature of the goods as imports or exports and instead focused on the nature of the exaction at issue.  *Michelin,* 423 U.S. at 279, 96 S.Ct. 535.  The *Michelin* Court determined that the question of a violation of the Import-Export Clause turns on whether the exaction in question was "the type of state exaction which the Framers of the Constitution ... had in mind as being an 'impost' or 'duty'...."  *Id.* at 283, 96 S.Ct. 535.  According to *Michelin,* an exaction is valid unless it interferes with the three policies concerns that motivated the Framers in adopting the Import-Export Clause:  1) maintaining federal uniformity in foreign commercial relations;  2) preventing the diversion to the states revenue generated by imported goods;  and 3) maintaining harmony among the states by preventing states from taxing goods flowing through seaboard states' ports to (or from) other states.  *Michelin,* 423 U.S. at 285-86, 96 S.Ct.

---

[2]Count I of the complaint alleges that the inspection fee "is an unlawful tax or Duty, prohibited by" the Import-Export Clause.  Count II of the complaint alleges that the inspection fee "unlawfully discriminates against exports in violation of" the Import-Export Clause.  In its Memorandum of Law in support of its motion for summary judgment, Auto Cargo again stated, "The complaint alleges that [the inspection fee] is violative of the Constitution of the United States, Article I, Section 10, Clause 2, the Import-Export Clause...."  In a joint pretrial statement, the parties agreed that the only issues of law for determination by the district court involved the question of whether the inspection fee violates the Import-Export Clause.

535.

*Michelin* involved a challenge to a Georgia state ad valorem property tax assessed against tires that Michelin imported from France and included in an inventory maintained at its wholesale warehouse. The Georgia Supreme Court had rejected *Michelin*'s appeal on the ground that the tires, now stored in a warehouse, had lost their status as imports. *Id.* at 279, 96 S.Ct. 535. Finding that a nondiscriminatory ad valorem property tax on goods no longer in transit did not in any way compromise the policy concerns underlying the Import-Export Clause, the Supreme Court upheld the validity of the Georgia tax. *Id.* at 286, 96 S.Ct. 535.

Auto Cargo argues that, because the facts of this case differ from those before the Supreme Court in *Michelin, Michelin* is inapplicable here. Although the facts in this case are different, the framework established in *Michelin* for assessing the constitutionality of an exaction under the Import-Export Clause is clearly a general one and not restricted simply to the facts under consideration in that case. Since *Michelin,* courts assessing the validity of state exactions on either imports or exports under the Import-Export Clause have relied exclusively on *Michelin* 's analysis. *See, e.g., R.J. Reynolds Tobacco Co. v. Durham County, North Carolina,* 479 U.S. 130, 152-55, 107 S.Ct. 499, 93 L.Ed.2d 449 (1986) (upholding the validity under the Import-Export Clause of North Carolina's ad valorem tax on imported tobacco); *Limbach v. Hooven & Allison Co.,* 466 U.S. 353, 104 S.Ct. 1837, 80 L.Ed.2d 356 (1984) (upholding the constitutionality of an Ohio ad valorem personal property tax on imported fibers still in their original packages); *Itel Containers Int'l Corp. v. Huddleston,* 507 U.S. 60, 76-78, 113 S.Ct. 1095, 122 L.Ed.2d 421 (1993) (upholding Tennessee's imposition of sales tax on the lease of cargo containers within the state for use in international shipping); *Louisiana Land & Exploration Co. v. Pilot Petroleum Corp.,* 900 F.2d 816, 819-821 (5th Cir.1990) (applying the *Michelin* policy analysis and striking down a direct state tax on jet fuel sold for export as violative of the Import-Export Clause). In *Washington Stevedoring,* the Supreme Court made clear that the *Michelin* analysis applies to cases involving exports as well as imports. *See* 435 U.S. at 753-58, 98 S.Ct. 1388 (finding that a state tax on stevedoring activities did not disturb the three policies protected by the Import-Export Clause). Accordingly, we analyze the inspection fee to determine whether its effects undermine the three policy concerns identified by the *Michelin* Court.

First, the inspection fee can have no possible effect on foreign commercial relations, as it applies only to business conducted at the Port and imposes no burdens on foreign businesses. *See Washington*

*Stevedoring,* 435 U.S. at 754, 98 S.Ct. 1388 (finding no effect on commercial regulation where challenged tax affects only business conducted within Washington State and where no foreign businesses or vessels are taxed). Far from disrupting federal uniformity in foreign commercial relations, the inspection fee is imposed in order to offset the costs to Dade County of effectuating federal regulations aimed at reducing the export of stolen vehicles. *See* 19 C.F.R. § 192 *et seq.* (2000) (regulating exportation of used self-propelled vehicles, vessels, and aircraft).

Second, the inspection fee "deprive[s] the Federal Government of no revenues to which it was entitled. The exaction merely pa[ys] for services ... supplied by the local government." *See Washington Stevedoring,* 435 U.S. at 753, 98 S.Ct. 1388 (summarizing the analysis in *Michelin*); *id.* at 754, 98 S.Ct. 1388 (finding that a state tax on stevedoring companies merely compensates the state for services and protection). Indeed, a state tax on exports could not deprive the federal government of revenue to which it is entitled, because the Constitution's Export Clause, which provides, "[n]o Tax or Duty shall be laid on Articles exported from any State," specifically forbids federal taxation of exports. U.S. Const. art. I, § 9, cl. 5; *see Washington Stevedoring,* 435 U.S. at 758, 98 S.Ct. 1388 (noting that "the Constitution forbids federal taxation of exports").

Finally, the inspection fee does not disrupt harmony among the states so long as there is a reasonable nexus between the person paying the fee and Dade County, the fee is properly apportioned and nondiscriminatory, and it relates reasonably to the services provided by Dade County. *See Washington Stevedoring,* 435 U.S. at 754, 98 S.Ct. 1388. As only those who use the Port are required to pay the inspection fee, there is a reasonable nexus between those who pay the fee and Dade County. As Dade County installed the inspection facility in order to meet the needs of those who use it in order to export used self-propelled vehicles through the Port, the fee is properly apportioned and relates directly to the services provided. Indeed, as the Supreme Court noted in *R.J. Reynolds Tobacco,* if the inspection fee were not assessed, the effect would be to shift the burden from those who use the facility supported by the fee to the local taxpayers, "a result completely at odds with *Michelin.*" 479 U.S. at 154, 107 S.Ct. 499.

Auto Cargo makes no argument that the inspection fee has an adverse effect on the policy concerns that informed the Supreme Court's analysis in *Michelin;* that is, Auto Cargo has made no showing that the fee disrupts federal uniformity in foreign commercial relations, diverts to the states revenue generated by imported goods, or disrupts harmony among the states by taxing goods flowing through seaboard states' ports

to other states.

Instead, Auto Cargo broadly asserts that the inspection fee is "discriminatory" because it applies only to used self-propelled vehicles and not to other automobiles or to any other goods transported through the Port. If Auto Cargo intends that this argument relates to the Import-Export Clause, it misapprehends the meaning of the term "discriminatory" in this context. This fee is clearly non-discriminatory under the Import-Export Clause because it is not imposed in a way that discriminates against interstate or foreign commerce. The fee applies to all who use the facility at the Port, as it does not matter whether the vehicles that the parties seek to export entered the stream of commerce in Florida or in some other state. Accordingly, the fee does nothing to disrupt the harmony among the states. The issue of whether the inspection fee is somehow "discriminatory" or "unfair" in ways unrelated to the Import-Export Clause is not before us, and the fact that the inspection fee does not apply to other goods exported through the Port does not make it a discriminatory tax under *Michelin.* Accordingly, we find that the inspection fee is not discriminatory under the Import-Export Clause.

Finally, Auto Cargo draws on Supreme Court cases involving challenges to taxes or user fees brought under constitutional provisions *other* than the Import-Export Clause and maintains that the district court erred in relying on *Michelin* in finding the inspection fee non-discriminatory. The cases Auto Cargo cites to involve challenges under the Commerce Clause, the Export Clause, and the implied immunity of state governments from federal taxation. Auto Cargo may or may not have a viable claim based on these other constitutional grounds, but that is not the claim that has been pled here.

We reject Auto-Cargo's arguments that draw on *Evansville-Vanderburgh Airport Auth. Dist. v. Delta Airlines,* 405 U.S. 707, 716-17, 92 S.Ct. 1349, 31 L.Ed.2d 620 (1972), and *Massachusetts v. United States,* 435 U.S. 444, 464, 98 S.Ct. 1153, 55 L.Ed.2d 403 (1978), for the simple reason that *Michelin* establishes the only applicable standard for determining whether an exaction is discriminatory under the Import-Export Clause. In *Evansville-Vanderburgh,* private airlines brought a Commerce Clause challenge to a one dollar per passenger user fee imposed on airlines by state legislatures. In *Massachusetts,* the state challenged an annual registration tax as applied to state-owned aircraft as violative of the implied immunity of state governments from federal taxation. Neither of these cases provide any guidance for the adjudication of challenges brought under the Import-Export Clause.

Similarly, Auto Cargo appears to argue that we should apply standards imported from cases decided

under the Export Clause.  The Supreme Court has recently remarked on the difference between the Import-Export Clause and the Export Clause.  *Int'l Bus. Mach.,* 517 U.S. at 859, 116 S.Ct. 1793 ("It is simply no longer true that the Court perceives no substantive difference between the two Clauses.").  The two clauses place limitations on different sovereign entities:  while the Import-Export Clause limits state exactions, the Export Clause limits Congressional action.  In addition, while the Supreme Court has interpreted the Export Clause as allowing "no room for any federal tax, however generally applicable or nondiscriminatory, on goods in export transit," *United States v. United States Shoe Corp.,* 523 U.S. 360, 367, 118 S.Ct. 1290, 140 L.Ed.2d 453 (1998), it has interpreted the Import-Export Clause, as *permitting* states to impose nondiscriminatory taxes on imports or exports.  *Michelin,* 423 U.S. at 290, 96 S.Ct. 535.  We find that cases decided under the Export Clause provide us with no useful guidance in this case.

Accordingly, we cannot conclude that the district court erred in finding that the inspection fee is not a discriminatory exaction imposed in violation of the Import-Export Clause.  Thus, the district court's decision, granting summary judgment to Dade County, is

AFFIRMED.