**Electronically Filed
Intermediate Court of Appeals
CAAP-17-0000838
09-FEB-2022
10:24 AM
Dkt. 108 MO**

NO. CAAP-17-0000838

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

WARNE KEAHI YOUNG, Plaintiff-Appellant,
v.
HAWAII ISLAND HUMANE SOCIETY S.P.C.A., a non-profit corporation;
DONNA WHITAKER, Individually and in her official capacity as
Executive Director of the Hawaii Island Humane Society S.P.C.A.;
and STARR K. YAMADA, Individually and in her official capacity as
Humane Officer, Defendants/Cross-Claimants/Appellees,
and
MICHAEL G.M. OSTENDORP; CARROL COX; DARLEEN R.S. DELA CRUZ,
Defendants/Cross-Defendants
and
DOE DEFENDANTS 1-50, Defendants

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(Civil No. 3CC141000263)

**MEMORANDUM OPINION**
(By: Leonard, Presiding Judge, Hiraoka and McCullen, JJ.)

Self-represented Plaintiff-Appellant Warne Keahi **Young** appeals from the **Judgment** entered by the Circuit Court of the Third Circuit on September 15, 2017, in favor of Defendants/ Cross-Claimants/Appellees Hawaii Island Humane Society S.P.C.A. (**HIHS**), Donna Whitaker, and Starr K. **Yamada** (collectively, the **Humane Society Defendants**).[1] For the reasons explained below, we affirm the Judgment.

---

[1] The Honorable Greg K. Nakamura presided.

In 2011 Young (then represented by counsel) filed a lawsuit against the Humane Society Defendants (and others) in federal court (the **Federal Case**).  Young's federal complaint alleged both federal and state law claims.  The federal district court granted summary judgment in favor of the Humane Society Defendants on Young's federal claims, and declined to exercise supplemental jurisdiction over his state law claims.  See Young v. County of Hawaii, 947 F. Supp. 2d 1087 (D. Haw. 2013) (**Young I**).  The district court noted the following facts were uncontroverted:

> This case arises from the seizure of seventeen dogs ("Dogs") from a residence in Hilo and the subsequent events that resulted in the HIHS's disposal of the Dogs by way of euthanasia or offering the Dogs for adoption. ***The parties agree on the following basic outline of events***, but they disagree regarding the details.
>
> At some point in 2007, [Young] was charged with Animal Cruelty in the 2nd Degree under [Hawaii Revised Statutes (**HRS**)] § 711-1109.  After pleading guilty to the offense of animal neglect and cruelty, [Young] subsequently was fined and placed on probation.  As a result of the charges in 2007, [Young] was only allowed to have ten dogs at his house.
>
> On September 25, 2009, Yamada, an officer of HIHS, applied for a search warrant in the District Court of the Third Circuit of the State of Hawaiʻi to search [Young]'s residence . . . ("Residence").  According to the affidavit that Yamada submitted as part of the application, Yamada had observed two of the Dogs on June 30, August 17, September 18, and September 24, 2009.  She observed among other things that (1) the kennels of the two Dogs had feces covering the bottoms of the cages, (2) the Dogs did not have water in their bowls, and (3) one of the Dogs appeared to have a skin infection.  The District Court of the Third Circuit, State of Hawaiʻi subsequently granted Search Warrant No. 09-001 on September 25, 2009 ("Search Warrant") based on the search warrant application.
>
> The Search Warrant empowered HIHS officers to search for and seize any abused animals at the Residence, as well as documents establishing the identity of the person who owned or controlled the Residence.
>
> On the morning of September 29, 2009, Yamada executed the search warrant at the Residence and seized the Dogs, pieces of mail belonging to [Young], and a court document in [Young]'s name.  On that same morning of September 29, 2009, [Young] traveled to Oahu; he was not at the Residence when HIHS executed the search warrant.  On September 30, 2009, a Return of Search Warrant No. 09-001 was filed in the District Court of the Third Circuit, State of Hawaiʻi.  Yamada attached an inventory statement to the Return of

2

> Search Warrant containing a list of the Dogs, pieces of mail, and a court document seized from the Residence.
>
> Shortly thereafter, on or about October 1, 2009, [Young] and Roberta Young [(Young's biological mother)] met with Defendant [Michael G.M.] Ostendorp, an attorney in private practice, in Honolulu at the Waikiki Yacht Club. Ostendorp agreed to help [Young] and Roberta Young regarding the seizure of the Dogs on September 29, 2009. As a result of the agreement to help [Young] and Roberta Young, Ostendorp flew with Defendant [Carroll] Cox and [Young] to Hilo. Subsequently, Ostendorp met with HIHS Officer Yamada on October 5, 2009 regarding the status of the Dogs.
>
> During Ostendorp's meeting with Officer Yamada on October 5, 2009, Ostendorp told Yamada that he represented [Young], that [Young] was under suicide watch in a Honolulu hospital, and informed her that he "wanted to work this out because [Young] did not want to get into any more trouble since he was still on probation." Yamada indicated that an owner surrender of the dogs would be an ideal way to resolve the situation.
>
> At some point after the October 5 meeting, Defendant Ostendorp drafted a general Power of Attorney dated September 12, 2009, ("POA") purporting to appoint Roberta Young as [Young]'s attorney-in-fact. On October 7, 2009, Ostendorp called Yamada and stated that Roberta Young had a signed power of attorney [(**POA**)] from [Young], and that Roberta Young wanted to surrender the dogs to HIHS. Yamada told Ostendorp that she would need to speak with Roberta Young. A woman identifying herself as Roberta Young called later that day, stated that she had a power of attorney from [Young], and indicated that she wanted to surrender the Dogs to HIHS. During the conversation, the woman told Yamada that she was fearful of [Young] and did not want him to find out that she had surrendered the Dogs. Using [Young]'s general POA, Roberta Young completed an Animal Surrender Policy Form surrendering "her dogs" to HIHS on October 7, 2009 ("Surrender Form"). She gave the Surrender Form to Ostendorp, who in turn transmitted it to HIHS along with a letter asking Yamada not to notify [Young] regarding the status of the Dogs because "he is not the owner of the dogs."
>
> On October 13, 2009, Yamada sent an email requesting a power of attorney from Ostendorp. Ostendorp's office sent the September 12, 2009 general POA to Yamada. Subsequently, HIHS euthanized nine of the Dogs and placed eight of them for adoption.

Id. at 1092-94 (emphasis added) (footnotes and citations to district court record omitted).

The federal district court entered summary judgment in favor of the Humane Society Defendants on Young's federal claims on May 22, 2013. Young appealed. The Ninth Circuit Court of

Appeals affirmed.  Young v. County of Hawaii, 578 Fed. Appx. 728 (9th Cir. 2014) (Mem.) (**Young II**).

On July 15, 2014 (one month after the Ninth Circuit disposition was filed), Young filed this lawsuit.[2]  An amended complaint was filed on January 16, 2015.  Young's amended complaint alleged (among other things) that in September 2009 Yamada[3] applied for and executed a search warrant at Young's residence, damaged his property, and confiscated his dogs.  The dogs were either "killed, adopted out, or otherwise disposed of[.]"  The amended complaint alleged 15 counts against the Humane Society Defendants and the Other Defendants.[4]

The Humane Society Defendants filed a motion for summary judgment.  On February 24, 2016, the circuit court entered an order granting summary judgment for the Humane Society Defendants on counts 1-3, 5, 9-11 and 13-15 of Young's amended complaint.

The Humane Society Defendants filed a second motion for summary judgment after the discovery cut off.  On January 31, 2017, the circuit court entered an order granting summary judgment for the Humane Society Defendants on the remaining claims of Young's amended complaint.

The Humane Society Defendants moved for entry of a final judgment under Rule 54(b) of the Hawaiʻi Rules of Civil

---

[2]     Also named as defendants were Michael G.M. Ostendorp, Carrol Cox, and Darleen R.S. Dela Cruz (collectively, the **Other Defendants**).  The Other Defendants are not parties to this appeal; Young's claims against the Other Defendants remain pending before the circuit court.

[3]     Yamada was employed by HIHS.  HIHS was an independent contractor hired by the **County** of Hawaiʻi to carry out the County's animal control program under the Hawaiʻi County Code and the Hawaii Revised Statutes.  See Young I, 947 F. Supp. 2d at 1107.

[4]     The counts were labeled: **(1)** violations of article I, section 5 of the Constitution of the State of Hawaiʻi; **(2)** negligence; **(3)** negligent training and supervision; **(4)** legal malpractice (against Ostendorp only); **(5)** breach of fiduciary duty; **(6)** failure to disclose conflict of interest (against Ostendorp only); **(7)** fraud and misrepresentation (against Ostendorp only); **(8)** undue influence (against Other Defendants); **(9)** civil conspiracy; **(10)** negligent and/or intentional infliction of severe emotional distress; **(11)** fraud; **(12)** negligence/ gross negligence (against Dela Cruz only); **(13)** conversion; **(14)** trespass; and **(15)** replevin.

Procedure. Young did not oppose the motion. On September 15, 2017, the circuit court entered an order granting the motion and, separately, the Judgment.[5] This appeal followed.

Young's amended opening brief[6] presents three issues:

A. Whether the circuit court erred in finding that [Young]'s negligence claims were barred by the doctrine of collateral estoppel res judicata [sic].

B. Whether the court erred in finding that [Young]'s claims for intentional infliction of emotional distress were barred by the doctrine of res judicata.

C. Whether Hawaii Revised Statute [sic] section 710-1000 is void for vagueness and thus in violation of the United States Constitution's due process clause of the 14th amendment [sic] based upon the holding of the United States District Court and the Ninth Circuit Court of Appeals that goes against the seemingly clear and unambiguous language of the statute.

Young seeks the following relief with respect to the Humane Society Defendants:

[Young] respectfully asks the Court to overturn the dismissals of his negligence claims and his intentional infliction of emotional distress claims.

[Young] further respectfully asks the Court for a determination of whether HRS [§] 710-1000(13) is constitutionally void for vagueness.

---

[5] The Judgment incorrectly states that the Humane Society Defendants have not asserted any cross-claims against the Other Defendants. However, the Judgment contains the language required by Rule 54(b) of the Hawaiʻi Rules of Civil Procedure and disposes of all claims against the Humane Society Defendants. The error does not affect our jurisdiction over this appeal.

[6] Young's Amended Opening Brief does not comply with Rule 28 of the Hawaiʻi Rules of Appellate Procedure (**HRAP**). Nevertheless, to promote access to justice the Hawaiʻi Supreme Court instructs that pleadings prepared by self-represented litigants should be interpreted liberally, and self-represented litigants should not automatically be foreclosed from appellate review because they fail to comply with court rules. Erum v. Llego, 147 Hawaiʻi 368, 380-81, 465 P.3d 815, 827-28 (2020). We accordingly address Young's arguments to the extent we can discern them.

**A. Young's claims for general negligence, negligent training and supervision, and negligent infliction of emotional distress are barred by the doctrine of issue preclusion and by HRS § 663-8.9.**

The first issue presented is whether Young's claims for negligence, negligent training and supervision, and negligent infliction of emotional distress (**NIED**) are barred by the doctrine of issue preclusion. The application of issue preclusion is a question of law reviewed de novo. In re Thomas H. Gentry Revocable Tr., 138 Hawaiʻi 158, 168, 378 P.3d 874, 884 (2016).

"In a subsequent state court action, the collateral estoppel effect of a federal law ruling in a prior federal court adjudication is a question of federal law." International Brotherhood of Electrical Workers, Local 1357 v. Hawaiian Tel. Co., 68 Haw. 316, 331 n.17, 713 P.2d 943, 955 n.17 (1986) (citing Limbach v. Hooven & Allison Co., 466 U.S. 353, 359–63 (1984)); cf. Wong v. Cayetano, 111 Hawaiʻi 462, 477, 143 P.3d 1, 16 (2006) ("Because the federal suit was based on federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, we must apply federal claim preclusion law.").

Under federal law, issue preclusion "bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, *even if the issue recurs in the context of a different claim*." Taylor v. Sturgell, 553 U.S. 880, 892 (2008) (cleaned up) (emphasis added).

The federal claims at issue in the Federal Case were asserted under 42 U.S.C. § 1983, for alleged violation of Young's rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. A plaintiff must prove two elements to prevail on a § 1983 claim: (1) "that a right secured by the Constitution or laws of the United States was violated," and (2) "that the alleged violation was committed by a person acting under the color of State law." Young I, 947 F. Supp. 2d at 1097

6

(citation omitted).  The Ninth Circuit summarized the disposition of the federal claims:

> The Fourth Amendment's prohibition against unreasonable seizures is not violated if a government official's conduct is **objectively reasonable under the circumstances**.  The HIHS defendants acted **reasonably** in executing a valid judicial warrant that authorized seizure of the dogs and in accepting the legal transfer of the dogs from Roberta Young, who presented a POA certified by a notary as signed by Warne Young.
>
> . . . Nor did the HIHS officials lack authority to apply for and execute the search warrant, as they are "law enforcement officers" who may obtain search warrants under Hawaii law.
>
> Young's remaining Fifth and Fourteenth Amendment claims also fail.  Because **Young's property was seized pursuant to a valid search warrant**, there was no violation of the Takings Clause of the Fifth Amendment.

Young II, 578 Fed. Appx. at 729 (emphasis added) (citations omitted).[7]

A plaintiff must prove four elements to prevail on a claim for negligence: (1) a duty or obligation, recognized by the law, requiring the defendant to conform to a certain standard of conduct, for the protection of others against unreasonable risks of harm; (2) **a failure by the defendant to conform to the standard of conduct** — i.e., a breach of the duty; (3) a reasonably close causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the plaintiff.  Goran Pleho, LLC v. Lacy, 144 Hawai‘i 224, 238 n.10, 439 P.3d 176, 190 n.10 (2019) (emphasis added) (citation omitted).

The court in the Federal Case held that the Humane Society Defendants did not act unreasonably when they seized Young's dogs pursuant to a valid search warrant and accepted the legal transfer of the dogs from Roberta Young under a power of attorney certified by a notary as having been signed by Young.

---

[7]    The Ninth Circuit's memorandum opinion is not published, but is citable as precedent in this case under Ninth Circuit Rule 36-3(a) because it is "relevant under the . . . rules of . . . issue preclusion."

That precludes Young from arguing in this case that, in so doing, the Humane Society Defendants breached any legal duty they owed to Young.  The circuit court did not err by granting summary judgment to the Humane Society Defendants on Young's claims for general negligence and negligent training and supervision.  See Alves v. Mass. State Police, 66 N.E.3d 1038 (Mass. App. Ct. 2017) (where federal court entered summary judgment on plaintiff's 42 U.S.C. § 1983 claim for false arrest, plaintiff's state law negligence claims arising from the same arrest were barred by issue preclusion).

In addition, a claim for NIED "is nothing more than a negligence claim in which the alleged actual injury is wholly psychic[,] and is analyzed 'utilizing ordinary negligence principles.'"  Doe Parents No. 1 v. State, Dep't of Educ., 100 Hawaiʻi 34, 69, 58 P.3d 545, 580 (2002) (citation omitted).  Our issue preclusion analysis applies equally to Young's NIED claim against the Humane Society Defendants.

Young's NIED claim is also barred by HRS § 663-8.9 (1993).  The statute provides:

> **Serious emotional distress arising from property damage; cause of action abolished; exception for physical injury.**  (a) No party shall be liable for the negligent infliction of serious emotional distress or disturbance if the distress or disturbance arises solely out of damage to property or material objects.
> (b) This section shall not apply if the serious emotional distress or disturbance results in physical injury to or mental illness of the person who experiences the emotional distress or disturbance.

Young presented no evidence to the circuit court that he or anyone else was physically injured, or that he suffered from mental illness,[8] because of the Humane Society Defendants' alleged acts or omissions (which, in the Federal Case, were found to be reasonable under the circumstances).

---

[8]     Ostendorp told Yamada that he represented Young, who "was under suicide watch in a Honolulu hospital," even though Young was in Hilo with Ostendorp at the time.  Young I, 947 F. Supp. 2d at 1093.  Young denied telling Ostendorp "that he would commit suicide if he had to go to jail."  Id. at 1095.

**B.    Young's claim for intentional infliction of emotional distress is also barred by issue preclusion.**

Young contends that the circuit court erred by ruling that his claim for intentional infliction of emotional distress (**IIED**) was barred by the doctrine of res judicata (claim preclusion).  None of the circuit court's orders mention claim preclusion; claim preclusion does not apply because the Federal Case did not result in a final judgment on the merits of any of Young's state law claims against the Humane Society Defendants. Young's claim for IIED against the Humane Society Defendants is, however, barred by issue preclusion.

The elements of the tort of IIED are: (1) that the conduct allegedly causing the harm was intentional or reckless; (2) that the conduct was outrageous; (3) that the conduct caused; and (4) extreme emotional distress to another.  Goran Pleho, LLC, 144 Hawaiʻi at 237, 439 P.3d at 189 (citation omitted).  "There is no clear definition of the prohibited outrageous conduct, and the correct inquiry is simply whether an average member of the community would exclaim, **'*Outrageous!*'**"  Id. at 238, 439 P.3d at 190 (cleaned up) (emphasis added).

Young's IIED claim is based upon the same alleged conduct that formed the factual basis of his federal claims.  The federal district court granted, and the Ninth Circuit affirmed, the Humane Society Defendants' summary judgment on Young's federal claims.  That summary judgment was based upon there being no genuine issue of material fact that the Humane Society Defendants "acted *reasonably* in executing a valid judicial warrant that authorized seizure of the dogs and in accepting the legal transfer of the dogs from Roberta Young, who presented a POA certified by a notary as signed by Warne Young."  Young II, 578 Fed. Appx. at 729 (emphasis added).  Conduct that is found to be "objectively reasonable under the circumstances," id., cannot be found to be "outrageous."  The circuit court did not err by granting summary judgment to the Humane Society Defendants on

9

Young's IIED claim, based upon the federal court finding it uncontroverted that the Humane Society Defendants' conduct was objectively reasonable under the circumstances.

### C. Young's attack on the constitutionality of HRS § 710-1000 is waived.

Young appears to contend that the definitions of "public servant" and "law enforcement officer" set forth in HRS § 710-1000[9] are unconstitutionally vague. The record contains no indication that Young complied with HRAP Rule 44 by providing written notice of his constitutionality argument to the Attorney General of the State of Hawaiʻi. The amended opening brief fails to state where in the record the issue of constitutionality was brought to the attention of the circuit court, as required by HRAP Rule 28(b)(4). Nor does the record indicate that Young ever raised the constitutionality issue before the circuit court. "[T]he question of the constitutionality of a statute cannot be raised for the first time on appeal." State v. Hicks, 113 Hawaiʻi 60, 74, 148 P.3d 493, 507 (2006). We decline to address Young's constitutionality argument.

For the foregoing reasons, the Judgment in favor of the Humane Society Defendants and against Young, entered by the circuit court on September 15, 2017, is affirmed.

DATED: Honolulu, Hawaiʻi, February 9, 2022.

| On the briefs: | /s/ Katherine G. Leonard |
| | Presiding Judge |
| Warne Keahi Young, | |
| Self-represented Plaintiff- | /s/ Keith K. Hiraoka |
| Appellant. | Associate Judge |
| | |
| Brenda E. Morris, | /s/ Sonja M.P. McCullen |
| for Defendants/Cross- | Associate Judge |
| Claimants/Appellees Hawaii | |
| Island Humane Society | |
| S.P.C.A., Donna Whitaker, and | |
| Starr K. Yamada. | |

---

[9] Young's amended opening brief refers to "HRS 710-1000(13)" and "HRS 710-1000(15)," but HRS § 710-1000 has no numbered subsections.

Rory Soares Toomey,
Kathleen Kentish Lucero,
for Defendants/Cross-
Defendants Michael Ostendorp,
Carroll Cox, and Darleen Dela
Cruz.